IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Cause No. 3:14-CR-293-M |
| | § | ECF |
| JOHN WILEY PRICE, | § | |
| KATHY LOUISE NEALY, and | § | |
| DAPHENY ELAINE FAIN | § | |

## DEFENDANTS' SECOND MOTION FOR CONTINUANCE

*Shirley Baccus-Lobel*
Shirley Baccus-Lobel
Law Office of Shirley Baccus-Lobel, PC
8350 Meadow Road, Suite 186
Dallas, Texas 75231
214.220.8460
214.987.3169 (f)
sbl@lobellaw.com
Attorney for John Price

*Thomas W. Mills, Jr.*
Mills & Williams
5910 N. Central Expressway, Suite 900
Dallas, Texas 75206-5141
214.265.9265
214.363.3167 (f)
tmills@millsandwilliams.com
Attorney for Dapheny Fain

*Cheryl Brown Wattley*
Cheryl Brown Wattley
Law Office of Cheryl B. Wattley
3737 Atlanta Street
Dallas, Texas 75215
214.882.0855
cheryl.brown.wattley@gmail.com
Attorney for Kathy Nealy

Second Motion for Continuance - Page 1

*Chris Monroe Knox*
Law Office of Chris Knox
900 Jackson St., Suite 650
Dallas, Texas 75202
214.741.7474
214.747.7711 (f)
chrisknox@knoxcriminaldefense.com
Attorney for John Price

*Marlo P. Cadeddu*
Law Office of Marlo P. Cadeddu
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
214.220.9000
214.744.3015 (f)
mc@marlocadeddu.com
Attorney for Dapheny Fain

*Russell Wilson, II*
Law Office of Russell Wilson, II
1910 Pacific Ave., Suite 15100
Dallas, Texas 75201
469.573.0211
Attyrwilson@msn.com
Attorney for Kathy Nealy

## TABLE OF CONTENTS

Page

I.    INTRODUCTION                                                          5

II.   PRODUCTION OF THE DISCOVERY MATERIALS                     9

III.  ONGOING ACTIVITY TO ADDRESS THE DISCOVERY        17
      PRODUCTIONS

IV.   A SECOND CONTINUANCE OF THE TRIAL DATE IS
      NECESSARY IN ORDER TO PROVIDE AN ADEQUATE
      OPPORTUNITY FOR THE DEFENSE TO REVIEW THE
      DISCOVERY, INVESTIGATE THE CASE, AND PREPARE
      FOR TRIAL, AND IN ORDER TO PROVIDE TO THESE
      DEFENDANTS THE EFFECTIVE ASSISTANCE OF COUNSEL
      AND THE DUE PROCESS OF LAW TO WHICH THEY ARE
      ENTITLED                                                            18

V.    CONCLUSION                                                         20

VI.   CERTIFICATE OF CONFERENCE                                  21

VII.  CERTIFICATE OF SERVICE                                       21

ATTACHMENTS

1.    Approval of request for continuance, Defendant Price

2.    Approval of request for continuance, Defendant Nealy

3.    Approval of request for continuance, Defendant Fain

4.    Declaration by Daniel J. James and Chart of Discovery Productions

5.    Government's original discovery chart

## AUTHORITIES

|                                              | Page   |
| -------------------------------------------- | ------ |
| Amendment V, U.S. Constitution               | 7, 20  |
| Amendment VI, U.S. Constitution              | 7, 19  |
| *Wardius v. Oregon,* 412 U.S. 470 (1973)     | 19, 20 |
| 18 U. S. C. 3161(h)(7)(B)(i)(ii) and (iv)    | 19     |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Cause No. 3:14-CR-293-M |
| | § | ECF |
| JOHN WILEY PRICE, | § | |
| KATHY LOUISE NEALY, and | § | |
| DAPHENY ELAINE FAIN | § | |

## DEFENDANTS' SECOND MOTION FOR CONTINUANCE
### (With Supporting Memorandum)

COME NOW Defendants PRICE, NEALY AND FAIN and move this Court to grant a second continuance of the trial of this case, and to enlarge the corresponding pretrial deadlines, in order to provide an adequate opportunity for review of those materials obtained by the government which have been (and are continuing to be) produced to the defense and also to fully investigate and prepare for trial; and in support of this motion the Defendants submit the following:

## I.    INTRODUCTION

A.    On July 23, 2014, an indictment was filed which claims that Defendants Price and Nealy conspired [18 U.S.C. 371] to violate 18 U.S.C. 666 (count 1, indictment at pages 11-83) and committed mail fraud [18 U.S.C. 1341 and 1346] (counts 2-7, indictment at pages 84-86). In addition, the indictment claims there existed a

conspiracy to obstruct the IRS, in violation of 18 U.S.C. 371 (count 8, indictment at pages 87-100), an allegation brought against Defendants Price, Nealy, and Fain; further, the government lodges against Defendant Price claims that false tax returns were submitted for tax years 2007, 2008 and 2009, in violation of 26 U.S.C. 7206(1) (counts 9-11, indictment at page 101), and the government lodges against Defendant Nealy a claim of attempt (October 2003 through June 2011) to defeat payment of tax for calendar tax years 2002-2009, in violation of 26 U.S.C. 7201 (count 12, indictment at pages 102-103).  Finally, the government asserts that Defendant Fain made a purportedly false statement to the FBI on June 27, 2011, in violation of 18 U.S.C. 1001 (count 13, indictment at page 104). Pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. 2461 (c), the indictment seeks forfeiture of  proceeds attributable to any violations, in the event there are any convictions on Counts 1-7 (indictment at pages 105-106; defendants Price and Nealy).[1]

B.      The 107-page indictment covers a 10 ½ year time period and concludes more than 4 years ago ("in or about January 2001 and continuing through on or about June 27, 2011"). Search warrants were executed with respect to these Defendants in June 2011, and the investigation which preceded these warrants commenced years earlier.

---

[1] A fourth defendant, Christian Campbell, is also named in the indictment's forfeiture notice. He was charged only in count 1. He entered a plea of guilty to that count (Docs. 120, 122, 124, 125, 126).

Second Motion for Continuance - Page 6

C.      The government and all defendants filed a joint motion for continuance of the trial date and also asked this Court to declare the case complex (Doc. 34).  Based upon the multiple factual allegations of the indictment and its complexity, as well as its 10 1/2-year time span, and the voluminous discovery, this Court found the case was complex, granted the joint motion, and continued trial of the case to January 19, 2016 (Doc. 36).

D.       In an ordinary case, the discovery is provided and reviewed as an initial phase of the proceeding.  This is followed by the next phase, the defendant's informed and independent investigation, which relies in no small measure upon the information gleaned from review of the discovery.  After this, a determination is made with respect to pretrial motions and, finally, when cases proceed to trial, the trial preparation commences.

E.      This second motion for continuance is not brought for purpose of delay but, rather, in order to provide these Defendants with the effective assistance of counsel secured by the 6th Amendment. Effective assistance of counsel cannot be achieved unless and until these Defendants receive (1) full access to the discovery and (2) an adequate opportunity to review the materials provided.  Without this, the adversarial balance required by the due process of law guaranteed by the 5th Amendment cannot be achieved. This second motion for continuance is necessary for two reasons:  (1)

the Defendants do not yet have actual access to substantial portions of the discovery, including material produced early in the discovery phase of this proceeding; and (2) much of the discovery was produced only recently.

F.    On an even playing field, the time actually required to review the staggering volume of discovery in this case would equate to a time period equivalent to that which the government has enjoyed for its review of the material.  At the very least, the government man hours (prosecutors, agents and other officials, financial analysts, para-legals, legal assistants, etc.) devoted to this investigation and case would provide the Court with a revealing measure of what this case actually requires of the defense.

G.    For a long time prior to execution of the searches and seizures in this case (in June 2011), and for over four (4) years thereafter, the prosecution has used the considerable resources at its disposal to gather, process, and review an extraordinary volume of material.  This includes nearly 1,000 grand jury subpoenas.[2] The ability to navigate that material is crucial to the ability to provide effective assistance of counsel to the Defendants, and no meaningful defense investigation can occur without it. Thus, this Court's directive that "the Government must make every reasonable effort to produce the documents for the Defendants' use in a way that is

---

[2] See Attachment 5. We are aware of no other case in this district or elsewhere which has involved this volume of grand jury subpoenas.

relatively easy, efficient, and convenient for the Defendants to access, process, and search" (Doc. 32).

H.     It is important to observe that the collected data in this case is often mis-described as "evidence".  It is not evidence, and the percentage of this material which actually constitutes evidence is likely to be minuscule.  That said, the whole body of material must of course be searched and much of it reviewed, to the extent possible given the constraints of time and manpower.

II.     PRODUCTION OF THE DISCOVERY MATERIALS

A.     The prosecution's discovery productions were completed only recently, in September 2015.[3] General descriptions of the data productions are set forth below (in date sequence). See Attachment 4 to this motion.[4]  This review of the productions also includes brief mention of other circumstances pertinent to the pace of the discovery (more fully discussed in Part III).

**September 9, 2014: Production 1**

---

[3] There likely will be additional productions (as often occurs, in any case). By way of example only, it appears there as yet have been no productions of grand jury transcripts and witness statements. That material is expected to be fairly voluminous, given the duration of the investigation. Moreover, some witnesses have been brought before the grand jury several times. *Compare United States v. Menendez,* No. 2:15-cr-00155 (D.N.J.), the prosecution of a sitting U.S. Senator, where grand jury transcripts and witness statements were produced to the defense early in the proceeding, and where the total volume of material produced in discovery is but a tiny fraction of what is involved here (Doc. 113-1).

[4] A listing of the productions, together with volume estimates and guesstimates, are submitted with this motion, with the forensic expert's declaration. Attachment 4.

» 276 discs of Commissioner's Court [CC] recordings for 2002-2011 for which no transcripts have been provided. The recordings are not identified by any pertinent information other than the dates of the sessions.

» 10 discs of unindexed material seized by search warrant from Defendants Price, Nealy and Fain (estimated volume: 7 gigabytes [GBs]).

### November 25, 2014: Production 3[5]

» 493 gigabytes in Concordance format. This is represented to include documents intended for the prosecution's case-in-chief and will become accessible to the defense upon completion of the Federal Public Defender's [FPD's] uploading of the discovery and its availability on the Summation database, as discussed *infra*. Like all materials produced in Concordance load files, these materials have not been available to these Defendants. Concordance load files were produced by the prosecution to Defendant Campbell's attorneys, with the concurrence of other defense counsel appointed pursuant to the Criminal Justice Act [CJA], to become accessible once the discovery productions were processed and uploaded to a hosting server.[6]

» 7 hard drives of pole camera videos, for which no surveillance markers are

---

[5] Production 2 consists of materials produced by the government as pertinent to ancillary legal issues.

[6] Because certain of the Concordance productions were not included in the data provided to the FPD for uploading to its server (Productions 4, 5.1 and 5.2), that material is currently being re-copied.

Second Motion for Continuance - Page 10

provided and for which the only pertinent information disclosed is the locale under surveillance and the period of time the cameras operated (these were in operation at several locales for substantial periods of time; estimated volume: 3.533 terabytes [TBs] [7]).

**December 2014, Productions 3, 4 and 6 [no additional material]**:

» The 276 recordings in Production 1 are again provided, on 20 DVDs, and are re-designated as part of Production 3 [estimated volume: 94 gigabytes[8]].

» The 493 gigabytes in Concordance format in Production 3 are re-designated as Production 4.

» The 7 hard drives with pole camera videos in Production 3 are re-designated Production 6.

**February 6, 2015:  Productions 3.a and 5.1**

» 10 discs of additional CC recordings. Production 3.a [estimated volume: 7 gigabytes]

» 387 gigabytes of subpoenaed materials in Concordance format, with index. Production 5.1

---

[7] A gigabyte will (very) roughly approximate 30 minutes of video which would translate to approximately 106,000 minutes or 1,766 hours of viewing time. Although the defense has vetted the problem of how to review this material, we have not yet come up with a solution.

[8] Only very rough estimates (better described perhaps as guesstimates) can be provided with respect to audio and video files, and these estimates may be significantly understated.

**March 26, 2015: Production 8**

» 2100 gigabytes of ESI (electronically stored information), digital data in various formats, extracted from multiple electronic devices, processed and retained at North Texas Regional Computer Forensic Lab [RCFL], produced with list of the devices (over 100).  The total body of this digital data is 8 TBs, of which 4 TBs was designated under the heading "Relativity".  See Attachment 5, Government's original discovery chart.  Eventually that 4 TB volume changed to 2.1 TBs. That 2.1 terabytes has been imaged and produced to the FPD.  Production 8 remains an outstanding discovery issue.[9] It is the position of the defense that this data must be inspected at RCFL in order to ascertain the exact nature of the data which must be processed and analyzed by the defense.

_____

**April 2015:** As discussed *infra* (Part III),  once sufficient data was compiled (that is, best guesstimates of volume, format, etc.), bids were solicited for the considerable forensic processing and hosting needs of this case. Due to the costs revealed by the

_____

[9] Several discovery issues are pending, including the need to inspect the ESI so that the defense can independently determine precisely what is included in the material from which Production 8 is derived.  In light of the government's position that its productions are for the most part (but not entirely) completed (Doc. 172), it is anticipated that the parties will confer in order to determine those issues which can be resolved satisfactorily without recourse to the Court's time. Another critical issue will be whether the sources of data can be determined from the productions.

bids ultimately received, this Court and Magistrate Judge Toliver sought an alternative solution. The Federal Public Defender [FPD] agreed to serve as the coordinating discovery attorney for the case and was appointed in **May**.  The FPD's cooperation and assistance resulted in savings of close to $1,000,000.  In **July** 2015, the FPD received the necessary funding for the equipment required for the hosting server. This innovation is a pilot project and is expected to be used in future cases involving voluminous document production, in order to minimize the substantial costs to the public which would otherwise accrue as a consequence of essential forensic needs.

_____

### May 15, 2015: Production 5.2

» 473.2 gigabytes of subpoenaed materials in Concordance format

» 70.8 gigabytes of Commissioner's Court videos + miscellaneous audios

### June 25, 2015:  Productions 7[10], 8 Updated, and 9

» 9.31 gigabytes of subpoenaed and other material in Concordance format. Production 7.

» Production 8 Update providing requested formats for the digital data.

» 14 bankers' boxes of documents made available for inspection.  Production

---

[10] There exists a discrepancy between Production 7's volume (9.31 GBs) according to the prosecution's letter and the file size received by the FPD (1.12 GBs).

Second Motion for Continuance - Page 13

9 [estimated volume, 16.8 GBs].

### July 1, 2015: Production 12

» Search warrant photographs, produced on compact discs (estimated volume: 1.9 GBs).

_____

**July 17, 2015**, budget notice received.

_____

### July 31, 2015: Productions 5.3, 14, and 15

» 500 gigabytes of emails and documents produced by Dallas County and subpoenaed materials, in Concordance.  Production 5.3

» Bulky materials and valuables, with index. Production 14 (volume unknown).

» Surveillance photographs.  Production 15 (volume not calculated).

### August 11, 2015:  Productions 10, 11, 16, 18, 19, 20

» Privilege logs. Production10 (estimated volume 1.09 GBs)

» 29 gigabytes of "1-D recordings and data".  Production 11.

» Additional data.  Production 16 (estimated volume:  .46 GBs)

» IRS tax returns and audits.  Production 18 (estimated volume: .39 GBs).

» Access to 9 banker's boxes of "filtered documents" provided by Dallas County.  Production 19 (estimated volume: 10.8 GBs). The defense request for detail

regarding this "filtering" remains outstanding.

» Criminal records. Production 20.

**August 27, 2015: Production 17**

» 4 discs with some of the materials from the civil forfeiture case (estimated volume: 2.8 GBs).

**September 16, 2015: Productions 4.a, 5.3 additions, 7.a, 14 update, 19 update**

» Additional materials obtained by search warrants and electronic data obtained by court order, in Concordance format.  Production 4.a (estimated volume: 4.07 GBs)

» Additional subpoenaed items.  Production 5.3 (estimated volume 500 GBs).

» Additional "Main 1A" material, in Concordance.  Production 7.a (estimated volume: .11 GBs)

» Revised index to Production 14 received.

» 9 banker's boxes of "filtered documents" scanned and provided in Concordance.  Production 19 update.

**September 22, 23, 2015: Production 13**

» Search warrant materials.

B.     In early October 2015, soon after these last productions, several productions (4.a, 5.3, 7, 7a, 8, 10, 11, 16, 18, 19) began to be uploaded to the server hosted by the

FPD. This included some but not all of the productions in Concordance load files.[11]

Other productions (3, 3.a, 6, 9, 12, 13, 14, 15, 17, and 20) are not hosted on the FPD's

server but are independently available to the Defendants.  These are principally audio

and video files and photographs, as well as bulky material. The total volume of all

productions has not been finally determined but the volume to date is estimated to be

approximately 7.74 terabytes.  This volume estimate does not include Productions  13,

14, 15 and 20. As stated, a question remains regarding Production 8.[12]

C.      In order for the Summation software to function optimally on the FPD server,

the next phase (ongoing at this time) involves the removal of material per processing

parameters for the electronically stored information [ESI] provided in forensic image

format. These parameters have been determined by the defense, after which the

forensic material will be loaded onto the server by the FPD's staff.  This process will

also identify the software programs which CJA counsel must possess (or acquire) in

order to receive and review the data.

---

[11] Production 1 (10 discs of data obtained by search warrant) will be loaded to the FPD server but also has been independently available to the Defendants.

[12] The government recently provided a revision to the ESI material. It is now 2.1 TBs (Doc. 172 and 172-1), which is the volume produced to the FPD in Production 8.  The government's original discovery chart reflects 8 TBs of ESI material. Attachment 5 to this motion. The government advises that this chart denotes the volume of the productions received by the government.

III.    ONGOING ACTIVITY TO ADDRESS THE DISCOVERY PRODUCTIONS

A.    From early in this proceeding until April 2015, counsel investigated ways to meet the exceptionally demanding forensic processing and hosting needs of the case and ultimately compiled sufficient data to solicit and obtain bids for these functions.

B.    Due to the substantial costs involved, the Courts requested that the Federal Public Defender serve as the coordinating discovery attorney for the defendants and provide the forensic processing and hosting for the case. In mid-May, Magistrate Judge Toliver appointed the FPD to serve as the coordinating discovery attorney.[13] This is a pilot project, an innovation envisioned for future cases as well. The FPD's role is to provide the server, process the data, and host the discovery. This innovation has saved close to $1,000,000 in forensic processing and hosting costs.  As the Court is aware, the FPD has no substantive involvement as a defense attorney for any of the Defendants, any more than a commercial vendor would.

C.    In **May**, the FPD submitted its request for funding to the Defender Services Office and on **July 10, 2015** received funding approval for the equipment necessary to implementation of the pilot project.[14] This large-scale project involved multiple

---

[13] The appointment of the FPD did not delay this case, certainly not to any significant extent.  Had the course of this proceeding resulted in acceptance of a bid from one of the commercial vendors, the procedures for acquiring and hosting the material would have been substantially the same.

[14] On July 31, 2015, CJA counsel were notified regarding budgets.

equipment and software vendors. The equipment was ordered in **July** and most of the equipment was received in **August**. The FPD received the final component of the server **mid-September**, following an unexpected delay.

D.      Thereafter, the FPD's staff met with vendor representatives to configure the server, after which representatives from the case management company began remotely installing and configuring their programs on the server.

E.      In **early October**, the FPD technical staff began processing the electronic discovery and loading it onto the server. The defense identification of parameters for the data culling for Summation was recently completed. This phase will also identify the various programs which CJA counsel must have in order to review the data. Following this, the FPD advises that additional training will be required and that he believes the system will be up and running and accessible to the defense in November, hopefully early November.

IV.     A SECOND CONTINUANCE OF THE TRIAL DATE IS NECESSARY IN ORDER TO PROVIDE AN ADEQUATE OPPORTUNITY FOR THE DEFENSE TO REVIEW THE DISCOVERY, INVESTIGATE THE CASE, AND PREPARE FOR TRIAL, AND IN ORDER TO PROVIDE TO THESE DEFENDANTS THE EFFECTIVE ASSISTANCE OF COUNSEL AND THE DUE PROCESS OF LAW TO WHICH THEY ARE ENTITLED

A.      The Defendants have proceeded in good faith to address the exceptional discovery and forensic demands of this case, as well as numerous other matters

pertaining to the law and facts of this case. Despite the unavailability of a substantial portion of the discovery materials in a completed searchable database, the Defendants have proceeded with diligence and have invested substantial time and effort in review of available discovery materials, independent investigation, and legal research of numerous issues raised by this case, which is not only factually complex but also legally complex.  It will be impossible for the Defendants to review the voluminous discovery materials, or to complete an independent investigation, prior to the present trial date of January 19, 2016, even though the Defendants have exercised due diligence and continue to do so.  In these circumstances, and given the complexity of the case and the extraordinary volume of discovery, much of which the Defendants have as yet had no opportunity to review, the failure to grant the requested continuance would be contrary to the best interests of justice and would in fact result in a miscarriage of justice, and would deny the Defendants and their counsel the reasonable time necessary for effective preparation. 18 U. S. C. 3161(h)(7)(B)Ii)(ii) and (iv).  The requested continuance is essential to the ability to provide these Defendants with the effective assistance of counsel guaranteed by the Sixth Amendment.

B.      Ours is an adversarial system.  "[I]t is hardly an end in itself; it is not yet a poker game . . .." *Wardius v. Oregon,* 412 U.S. 470, 474 (1973), citing *Williams v.*

*Florida,* 399 U.S. 78 (1970). To be fair, that system must afford a level playing field. While this may be more a goal than a reality of the criminal prosecution system, achieving that balance is fundamental to the Fifth Amendment's guarantee of due process of law. *Wardius,* 412 U.S. at 474. Having investigated this Defendant for many years, including more than four years since the searches and seizures of June 2011, the due process precept of adversarial balance requires that these Defendants be afforded an adequate opportunity to review the massive volume of discovery in this case, conduct a thorough and independent investigation, and prepare for trial as informed advocates.

V.      CONCLUSION

        FOR THE REASONS STATED, this Court should grant a continuance which is commensurate with the volume of discovery which must be reviewed and which is on a level playing field with the prosecutions' opportunity to review the same material.


Respectfully submitted,

*Shirley Baccus-Lobel*                        *Cheryl Brown Wattley*
Shirley Baccus-Lobel                          Cheryl Brown Wattley
Law Office of Shirley Baccus-Lobel            Law Office of Cheryl B. Wattley
A Professional Corporation                    3737 Atlanta Street
8350 Meadow Road, Suite 186                   Dallas, Texas 75215
Dallas, Texas 75231                           214.882.0855
214.220.8460                                  cheryl.brown.wattley@gmail.com
214.987.3169 (f)
sbl@lobellaw.com

_Thomas W. Mills, Jr._
Mills & Williams
5910 N. Central Expressway, Suite 900
Dallas, Texas 75206-5141
214.265.9265
214.363.3167 (f)
tmills@millsandwilliams.com

_Chris Monroe Knox_
Law Office of Chris Knox
900 Jackson St., Suite 650
Dallas, Texas 75202
214.741.7474
214.747.7711 (f)
chrisknox@knoxcriminaldefense.com

_Marlo P. Cadeddu_
Law Office of Marlo P. Cadeddu
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
214.220.9000
214.744.3015 (f)
mc@cadeddulaw.com

_Russell Wilson, II_
Law Office of Russell Wilson, II
1910 Pacific Ave., Suite 15100
Dallas, Texas 75201
469.573.0211
Attyrwilson@msn.com

## CERTIFICATE OF CONFERENCE

On October 12, 2015, I conferred with government counsel, Walt Junker, who advised that the government is not opposed to the continuance and defers to the Court as to the appropriate length of any continuance.

_Shirley Baccus-Lobel_
SHIRLEY BACCUS-LOBEL

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2015 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means: AUSA's Walt, Katherine Miller, and Nick Bunch 3rd Floor, 1100 Commerce, Dallas, Texas 75242, and all counsel of record.

_Shirley Baccus-Lobel_
SHIRLEY BACCUS-LOBEL