IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Cause No. 3:14-CR-293-M |
| | § | ECF |
| JOHN PRICE, | § | |
| KATNY NEALY, and | § | |
| DAPHENY FAIN | § | |

RESPONSE TO GOVERNMENT'S MOTION TO
AMEND PROTECTIVE ORDER [DOC.229]

Defendants PRICE, NEALY and FAIN submit for the Court's consideration

this response to the government's motion to amend the protective order (Doc. 229):

**The Existing Protective Order**

1.      Commensurate with the initial discovery production in this case, the

government proposed a protective order governing the defendants' use of discovery

materials (Doc. 65); that motion asserted that a "protective order is necessary to

protect the discovery process and to permit the Government to fulfill its discovery

obligations under the Federal Rule of Criminal Procedure 16, 18 U.S.C. 3500, *Brady*

*v. Maryland,* 373 U.S. 83 (1963), *Giglio v. United States,* 405 U.S. 150 (1972), and

their progeny, while giving due regard to confidential information as well as the

congressional policy favoring the confidentiality of tax return and return information"

(Doc. 65 at 1). The government seeks to amend this order to add other categories of

protected materials (Doc. 229).

2.      Rule 16 (d) provides:

> (1) Protective and Modifying Orders.  At any time the court may,
> for good cause, deny, restrict, or defer discovery or inspection, or
> grant other appropriate relief. The court may permit a party to show
> good cause by a written statement that the court will inspect ex parte.
> If relief is granted, the court must preserve the entire text of the
> party's statement under seal.

> (2) Failure to Comply.  If a party fails to comply with this rule,
> the court may:

>> (A) order that party to permit the discovery or inspection;
>> specify its time, place, and manner; and prescribe other
>> just terms and conditions;
>> **(B)** grant a continuance;
>> **(C)** prohibit that party from introducing the undisclosed
>> evidence; or
>> **(D)** enter any other order that is just under the circumstances.

The Federal Rules of Criminal Procedure do not otherwise address so-called

"protective orders",[1] nor do this District's Local Criminal Rules.

3.      Defendants responded to the government's original motion for a protective

---

[1] Instead, the rules and procedures applicable to federal criminal proceedings generally rely upon the exercise of sound discretion by the lawyers representing parties. While the rule as crafted acknowledges the courts' broad authority with respect to regulation of discovery matters, it addresses in particular the need for restriction which sometime arises in the context of a criminal prosecution - as, for example, when disclosure of a witness' identity would compromise his physical or financial security.  See *Advisory Committee Notes,* Subdivision (d)(1), 1974 Amendment.

order, stated their positions, and raised various objections; a recap of this

background may be useful to consideration of the government's motion to amend

the order:

a.  All Defendants objected to the breadth of the government's proposed order

on the ground that its proposal embraced every document to be provided in discovery

which has turned out to be a staggering volume:  Defendant Price, "Restrictions

necessarily make the handling of discovery materials - and, *ergo,* investigation - more

difficult", Doc. 76 at 3; Defendant Nealy, Doc. 78 at 2: "As a second basis for an

umbrella protective order, the government asserts a need to 'ensure that the discovery

process is used for its intended purpose, i.e. trial preparation and litigation of issues.'

What is the basis for any suggestion that the discovery process will be used for any

other purpose? The government effectively urges this Court to correct a problem that

does not exist."; Defendant Fain, Doc. 77 at 3: " '[G]ood cause is established on a

showing that disclosure will work a clearly defined and serious injury to the party

seeking closure. The injury must be shown with specificity. Broad allegations of

harm, unsubstantiated by specific examples or articulated reasoning, do not support

a good cause showing' ", citing the Third Circuit's decision in *United States v. Wecht,*

484 F.3d 194, 211 (2007)(internal citations omitted); Defendant Campbell, although

not opposed to the proposed order, observed that the government's motion cast

unwarranted aspersions upon counsel (Doc. 67 at 1 and 3)[2];

b.  All Defendants acknowledged the need to protect tax materials due to the special status of such material under the law (Mr. Price, Doc. 76 at 2; Ms. Nealy, Doc. 78 at 3; Ms. Fain, Doc. 77 at 1-2).

c.  Defendant Price also did not oppose a specially crafted protective order applicable to categories of information for which sufficient need was demonstrated, such as privileged or proprietary data.[3]   Defendant Price otherwise opposed the motion as unsupported by a showing of need, overly burdensome, and lacking in clarity.

d.  With respect to documents containing personal identifiers, Defendant Nealy objected that the government possessed the same documents for a considerable period

---

[2] Defendant Campbell response also stated that "good cause" must "be predicated on 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' " [Doc. 67 at 1, citing *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)]. As that response also noted, the government's proposed order instead sought "an umbrella order that would cover every single document in the government's possession" (Doc. 67 at 1).

[3] "We do not dispute that a properly crafted protective order may be appropriate where a particularized and adequate basis for special treatment is demonstrated, including invocation of attorney client privilege or work product." Doc. 76 at 3. "We are also advised that the County of Dallas material includes proprietary data received as part of bid packages submitted by certain potential vendors.  Again, and as we have advised the government, where a sufficient reason for special treatment exits, a properly crafted protective order may be appropriate.  However, it is the government's burden - as the movant for special protection - to particularly identify any such items, articulate the need for protection, and submit them for either (1) agreement of the parties, or (2) the Court's imprimatur." Doc. 76 at 3-4.

and that the defendants and their representatives also could and should be trusted to handle the documents in an appropriate manner (Doc. 78 at 4): "In essence, the government is saying that the defendants and their representatives will not accord the same degree of respect to the personal information [as the government has 'for some time']. That accusation is baseless and unfounded."

e. Defendant Fain "agreed to a protective order governing the disclosure and use of Dallas County Commissioners Court documents identified by Dallas County as privileged or protected" and also had no objection to a protective order covering information protected from disclosure under Rule 49.1, F.R.Crim.P. (Doc. 77 at 2).

4.     After hearing from the parties, the Court entered an order which accorded special protection to certain categories of data and authorized disclosure of protected information to the defendants, their counsel and other professionals associated with the defense (and staff), subject to these constraints with respect to disclosure to third parties:

a.     Disclosure of tax returns and tax return information is limited to the taxpayer and her counsel (and in the case of an organization, an individual involved in the organization and counsel);

b.     The order applies the strictures of Rule 49.1, applicable to certain confidential personal identifying information in pleadings, to the use of the

documents by the defense;[4] the defense may use the documents but if disclosed to a third party, the documents must be redacted *or* the third party must acknowledge the protective order by signing a form appended to the Court's order[5]; this provision of the order applies not only to Rule 49.1 material but also to proprietary and privileged information;

c.  The order also adds the defense to the Rule 502, F.R.Evid., agreement between Dallas County and the government; that agreement governs privileged and potentially privileged material obtained from the County (Docs. 79 and 79-1).

5.      In its motion to amend the protective order, the government seeks to add additional categories of protected information to the order, specifically, the identify of potential witnesses, proffer agreements and immunity agreements, and statements of witnesses[6] (Doc. 229).

a.  The defendants have no objection to special treatment for immunity

---

[4] A principal reason for the government's motion for protective order was the burden of redacting Rule 49.1 material from the documents. Thus, it sought to shift the burden instead to the defense. Defendant Price objected to imposition of this burden on the grounds that it was unnecessary and the government was not subject to this admittedly burdensome constraint during the course of its lengthy and far-ranging investigation. Doc. 76   at 1, 5-6. The Defendant's position was that the defense investigation also could and should be entrusted to professionalism. *Id.* at 5.

[5] Neither the government nor the defendants requested use of this form.

[6] The government's motion refers to statements, not testimony. Clarification is needed that its intention fully to disclose all but a limited portion of the *Jencks* and *Giglio* material includes grand jury testimony.

agreements, provided the content of any such agreement may be used in any questioning of the individual who received the immunity (in the unlikely event an individual immunized from prosecution by the government agrees to an interview by the defense).[7] As for proffers, the content of those should be usable in the same manner as potential witness' statements and testimony.

b.   The proposed amended order otherwise constrains the defense function in an unnecessary and unreasonable manner.

6.   It goes without saying that the defense wishes to receive as soon as possible the statements and testimony of potential witnesses as this will facilitate its ability to prepare for trial; these concerns regarding the government's proposed amended order are raised solely in order to assure that the defense function is not impaired:[8]

a.   Certain terms of the proposed order impose unacceptable burdens on the defense function and would work a hardship on the ability of the defense to prepare

---

[7] Immunity agreements are like plea agreements.  Irrespective of whether the effective sealing of such agreements implicates First Amendment concerns, the defense does not oppose this treatment because it does not interfere significantly with the ability of the defense to prepare for trial and it is more important for the defense to obtain the agreement. Restrictions on use of the content of what potential witnesses say are entirely different.  Counsel cannot both provide effective assistance to these Defendants and also agree to constraints upon its use of the information contained in the statements, proffers and testimony for the purpose of trial preparation.

[8] The government's submission of an amended order (*vis-a-vis* a separate protective order) is probably an effort to accommodate a previous defense suggestion that the existing protective order should be used for any additional items warranting special protection.

for trial;

b.  The proposed order places members of the defense team in an untenable position with respect to those we interview, particularly those who are not well versed in legal proceedings;

c.  A lack of clarity imperils members of the defense team due to the risk of inadvertent violations.

7.    With the exception of tax return and return information,[9] the existing protective order does not restrict the Defendants' use of ***the substantive content*** of discovery materials for the purpose of investigation or trial preparation, but the proposed amended order would. For example, under the existing protective order, the defense is free to use the materials provided in discovery for investigative and trial preparation purposes even though certain of those materials contain protected confidential identifiers such as social security numbers or proprietary or privileged data; such identifiers must be redacted or, if not redacted, the person to whom that confidential information is disclosed must be apprised of and acknowledge the protective order.

_____

[9] Even the tax information restriction has proved unduly burdensome and the defense will be submitting a motion to modify the protective order.  These defendants are charged with a **conspiracy** to obstruct the Internal Revenue Service, an accusation for which tax return information is important, if not central. It is imperative that the defendants be able to examine all potential evidence related to this criminal tax charge, including one another's returns and return information.

Response to Government Motion to Amend Protective Order - Page 8

8.      The proposed amended protective order embraces as "protected" all persons'
identities (all "potential witnesses") and can be read as well to embrace the **content**
of all persons' statements. This is far more expansive than necessary to any
appropriate government objective and will have an adverse effect upon the
defendants' abilities to investigate and prepare for trial.

a.      Anyone whom the authorities have interviewed is a potential witness.
One's status as a potential witness is based not on the fact that the person has been
interviewed but upon knowledge (real or purported) about arguably relevant matters.
Literally read, the protective order would prohibit the defense from asking one
potential witness whether another identified-by-name potential witness could have
known "x, y, and z" (data) as that witness claimed. It also unreasonably prohibits the
defense from saying in an interview that the person interviewed or another person
*might be* a witness at trial, a factual circumstance that is in nowise dependent upon
the fact that a report of interview has been created by the government. The defense
obviously cannot say X will be a government witness at trial, because that is not
known to the defense and will not be known until a witness list is filed shortly before
trial. All persons with knowledge within the meaning of the rules are potential
witnesses for either side, and it is unreasonably burdensome to require that the
defense agree not to mention that a potential witness is in fact a potential witness.

Response to Government Motion to Amend Protective Order - Page 9

b.   Paragraph 6 of the proposed amended order states: "The parties shall not disclose the contents of protected information to any other individual or entity except as provided herein, as agreed to by the parties, or as further ordered by the Court." There are literally 100's of ways inadvertently to trip over these constraints.  And it is worth again noting that the government has conducted its investigation without any of these constraints.  First and perhaps most obvious, the amended order embraces the content of statements by individuals. The proposed restriction therefore embraces and *ergo* constrains defense use of information about the content of this case, that is, information about the case.[10]  Thus, if Joe Jones gave a statement that contradicted a statement given by Sally Smith, the defense could not discuss that difference of opinion about what occurred with those potential witnesses.   Another troubling example arises with respect to inaccurate characterization of a person's statement by an official.  That content must be usable *as that person's purported statement* in order to explore whether or not the statement is in fact an accurate depiction of what was said.

9.     Requiring the defendants and their representatives to have persons interviewed execute a legal document [Exhibit A] is neither necessary nor reasonable.  First, the

---

[10] We do not believe this is the intended consequence of the government's proposed amendments.

defense cannot give potential witnesses legal advice about execution of a legal document, even though it might be prudent for the potential witness to obtain legal advice.  Moreover, simply confronting a potential witness with a requirement to execute a legal document could well intimidate the individual, thus burdening the defense interview process (a sensible person might well say "thanks but no thanks" to a request for interview). Again, these *chilling* hurdles did not constrain the government's investigation. Second, these people (the potential witnesses) have rights, one of which is their right under the First Amendment to talk about anything they want to talk about.  *Butterworth v. Smith,* 494 U.S. 624 (1990) (in a unanimous First Amendment decision, the Court held that a witness could not be prohibited from disclosing his testimony before a grand jury).[11] The government is sympathetic to this concern regarding the use of Exhibit A but feels it cannot alter the existing order, even though none of the parties previously requested use of a form to monitor defense efforts on behalf of these defendants.

10.     The Defendants submit that the following modification of the protective order

---

[11] Different considerations apply (to some degree) to those involved in the actual representation of a defendant, that is, counsel, her staff, and those professionals assisting counsel. Such persons are governed in a court proceeding by rules of procedure, including of course Rule 16 (d).  Thus, just as government personnel and grand jurors (but not witnesses) may be bound by obligations of secrecy [Rule 6(e)(2), F.R.Crim.P.], narrow constraints carefully targeted to an identified and compelling need may be imposed with respect to materials acquired for use in a proceeding.

will serve the legitimate needs of the parties with respect to immunity agreements and proffers as well as statements and testimony of potential witnesses:

a.   The defendants having no objection, any immunity agreements may be placed under seal upon the sealed application of the government;

b.   The memorialized proffer, statement and/or testimony of any potential witness produced to an opposing party pursuant to *Jencks, Giglio, Brady,* 18 U.S.C. 3500, or Rule 26.2, F.R.Crim.P., may be shown to that witness[12]; use of the content of any such proffer, statement or testimony is not otherwise restricted[13];

c. The disclosure of a potential witness' proffer, statement, or testimony is not a representation by any party that the potential witness will be a witness for that party at trial. Any person with knowledge regarding the subject matter of the indictment is a potential witness who may appear as a witness at trial, irrespective of whether that potential witness provided a statement to any party. Accordingly, the government's

---

[12] In the event the Court should determine to expand the use of Exhibit A, over the objections voiced herein, a potential witness' memorialized statement/testimony/proffer then could be shown to any other potential witness who agreed to Exhibit A. This is how the Court handled documents containing personal identifiers or privileged material.  If a defendant elects to show an unredacted document to a potential witness, that witness must acknowledge receipt of the protective order and execute Exhibit A. Similarly, should the Court decide this is the more clearly defined way to handle the material, the parties could discuss the content of any statement with another potential witness but, if the statement were actually shown to that other potential witness, that person would have to acknowledge and execute Exhibit A.

[13] As is appropriate, the Court's protective order relies upon professionalism with respect to the appropriate scope of use.

Response to Government Motion to Amend Protective Order - Page 12

proposal to amend the protective order to prevent identification as trial witnesses of persons for whom a party discloses a proffer, statement, or testimony is denied as unnecessary.

FOR THE REASONS STATED, the Court should modify the protective order in accordance with these concerns.

Respectfully submitted,

*Shirley Baccus-Lobel*
SHIRLEY BACCUS-LOBEL
A Professional Corporation
8350 Meadow Road, Suite 186
Dallas, Texas 75231
214.220.8460
sbl@lobellaw.com
Attorney for John Price

*Thomas W. Mills, Jr.*
Mills & Williams
5910 N. Central Expressway, Suite 900
Dallas, Texas 75206-5141
214.265.9265
214.363.3167 (f)
tmills@millsandwilliams.com
Attorney for Dapheny Fain

*Cheryl Brown Wattley*
Law Offices of Cheryl B. Wattley
3737 Atlanta Street
Dallas, Texas 75215
214.882.0855
Cheryl.brown.wattley@gmail.com
Attorney for Kathy Nealy