IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES | § | |
| | § | |
| vs. | § | DOCKET NUMBER |
| | § | 3:14CR 293-M |
| | § | |
| JOHN WILEY PRICE (1) | § | Chief Judge Barbara M. G. Lynn |

### DEFENDANT PRICE'S MOTION TO DISMISS COUNTS 2-7 AIDING AND ABETTING MAIL FRAUD AND HONEST SERVICES FRAUD

Counts 2-7 allege that the Defendant and Kathy Nealy aided and abetted one another in a scheme to defraud in violation of 18 U.S.C. 2, 18 U.S.C. 1341 (mail fraud) and 18 U.S.C. 1346 (honest services fraud). The Defendant moves to dismiss these charges for failure to state an offense.

### I.     The Mailings

KLNA, the indictment states, is Kathy L. Nealy & Associates, one of Ms. Nealy's businesses. Doc. 1 at page 4, ¶10. The mailing in each of the 6 counts is a check for a monthly car payment, and each KLNA check is drawn on KLNA's account #1364 at Bank of America:

| Count | Date | Mailed Check |
|---|---|---|
| 2 | October 2, 2009 | A "BMW monthly car payment" ($ 1,558.87) |
| 3 | November 23, 2009 | A "BMW monthly car payment" ($ 1,632.75) |

| Count | Date | Mailed Check |
|---|---|---|
| 4 | July 1, 2010 | A "Chevrolet Avalanche monthly vehicle payment" ($ 687.85) |
| 5 | July 16, 2010 | A "Chevrolet Avalanche monthly vehicle payment" ($ 687.85) |
| 6 | November 1, 2010 | A "Chevrolet Avalanche monthly vehicle payment" ($ 756.63) |
| 7 | December 10, 2010 | A "Chevrolet Avalanche monthly vehicle payment" ($ 687.85) |

The indictment asserts that the Defendant and Ms. Nealy, aided and abetted by one another, caused these car payments to be delivered.[1] The indictment incorporates by reference most of Count 1, which includes the assertion that these automobiles were benefits provided to the Defendant by Ms. Nealy.  Doc. 1 at ¶¶s 33.b, 34.

## II.    The Question Presented is Jurisdictional

"In order to convict a defendant of mail fraud, the government must prove, inter alia, that the mails were used in furtherance of a scheme to defraud; this element is the basis of federal jurisdiction." *United States v. Pepper,* 51 F.3d 469, 474 (5th Cir. 1995). See, also, *United States v. Traxler,* 764 F.3d 486 (2014); *United States v. Vontsteen*, 872 F.2d 626 (5th Cir. 1989) (no jurisdictional basis for mail fraud). It is appropriate to raise a jurisdictional defect at any point in the proceeding. And it is

---

[1] The indictment does not state to whom, to what, or to where the checks were delivered.

incumbent upon courts to inquire whether jurisdiction exists to proceed. "[I]t is incumbent upon federal courts - trial and appellate - to constantly examine the basis for jurisdiction, doing so on [their] own motion if necessary." Save the Bay, Inc. v. United States Army, 639 F.2d 1100, 1102 (5th Cir. 1981).  If a lower court proceeded without subject matter jurisdiction, the appeals court must correct the invalid exercise of jurisdiction even if neither party objected below.  *E.g., Bender v. Williamsport Area School District,* 475 U.S. 534, 541 (1986).  The indictment here is a deficient pleading as a matter of law.  It is insufficient to allege mail fraud, on its face. Simply stated: allegations that Ms. Nealy gave the Defendant cars does not establish mail fraud even if she caused payments for the cars to be mailed.

### III.    The Purpose of the Mailing Must Be to Execute the Scheme to Defraud

The indictment on its face describes these cars as a benefit Ms. Nealy bestowed upon the Defendant. Doc. 1.[2]  With respect to Counts 2-7, the indictment on its face claims that the offenses occurred when the mails were used to make car payments. Without regard to the question whether the cars were or were not in fact benefits (a matter for the fact-finders), the mailing itself must in fact execute the scheme to defraud. On its face, the indictment is deficient, because the allegation -

---

[2] These assertions from Count 1 (conspiracy to violate 18 U.S.C. 666, in violation of 18 U.S.C. 371) are incorporated by reference in the honest services/mail fraud counts. Doc. 1 at 84-85, ¶¶s 297 and 302.

continued payment for a conferred benefit - cannot satisfy the jurisdictional element of mailing.[3]

In *Parr v. United States,* 363 U.S. 370 (1960), the defendants obtained from an oil company gas and services for their personal use by using school district credit cards. The alleged use of the mails was submission of invoices for these items to the school district. The Court held that no use of the mails to execute a scheme to defraud within the meaning of 18 U.S.C. 1341 had occurred, noting that the mailings themselves were not false representations to obtain money. *Id.* at 391-92. The mailings were peripheral to the scheme, neither " 'incident to an essential part of the scheme,' " (citing *Pereira v. United States,* 347 U.S. 1, 8) nor " 'a step in a plot'" (citing *Badders v. United States,* 240 U.S. 391, 394 (1916). *Id.* at 390. Applying its decision in *Kann v. United States,* 323 U.S. 88 (1944), the Court concluded that the mailings were not in execution of the scheme. And since the substantive counts could not be sustained, the conspiracy count could not be upheld. *Id.* at 393

In *Kann,* the petitioner and others were indicted for use of the mails in execution of a scheme to defraud. The indictment alleged that officers of a publicly held corporation (and others) diverted to another company they controlled a portion of the profits on government contracts and distributed those diverted profits to

---

[3] We use the term "jurisdictional" although that term often invokes serious disagreement. See, *e.g., United States v. Lipscomb,* 299 F.3d 303 (5th Cir. 2002). By "jurisdictional" we mean the basis for the exercise of federal jurisdiction.

themselves. Specifically, the mail fraud counts alleged that the defendants had used the other company to divert the profits to themselves and had used those diverted profits to pay bonuses to themselves. The subject mail fraud counts "charged that the defendants, for the purpose of executing the scheme, caused to be delivered by mail check[s]" in favor of the defendants. *Id.* at 90-91. However, as the court concluded, these mailings did not execute the scheme to defraud.

Similarly, in *United States v. Maze,* 414 U.S. 395 (1974), the defendant stole and repeatedly used a credit card. Invoices for the fraudulent charges were mailed to the issuing financial institution. The Court concluded that the mailings were not "sufficiently closely related to [the defendant's] scheme," even if it were assumed that he had caused the mailings. The Court distinguished its decision in *United States v. Sampson,* 371 U.S. 75 (1962). In *Sampson,* the government appealed the district court's dismissal of mail fraud counts for failure to state an offense, in reliance upon the *Kann* and *Parr* decisions. In *Sampson,* although the defendants had obtained the monies by fraud prior to the mailings, the Court concluded the mailings were nevertheless integral to the scheme to defraud because the indictment alleged those mailings "lulled" the victims into a false sense of security. Thus, "[m]ailings occurring after receipt of the goods obtained by fraud are within the statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the

apprehension of the defendants less likely than if no mailings had taken place.' " *United States v. Lane,* 474 U.S. 438, 451-52 (1986), citing *Maze,* 414 at 403; and *Sampson.*

*Schmuck v. United States,* 489 U.S. 705 (1989) involved a fraudulent odometer rollback scheme. The Court, noting that mailing allegations are sufficient if incident to an essential part of the scheme, concluded that the mailings of title registration were in execution of the scheme because they were incident to an essential part of the scheme, that is, the successful passage of title which was necessary to petitioner's relationship of trust and good will with the dealers "upon whose unwitting cooperation" the scheme depended.

Analyses by the Fifth Circuit also constrains use of the mail fraud statute, foreclosing efforts to extend its reach beyond a true connection to an essential part of the scheme. See, *e.g., United States v. Green,* 494 F.2d 820, 823-26 (1974). *Green* involved a fraudulent credit card scheme whereby the defendants submitted fraudulent credit cards applications and obtained and used the cards acquired, intending to defraud the issuer. The appellants contended no mail fraud offense was charged, as a matter of law. The Court reversed some of the mail fraud convictions on authority of the *Kann* decision but sustained the others, which concerned the applications mailed to secure the credit cards used in the fraudulent scheme. "In sum, since appellants' fraudulent credit card scheme began with the securing of the cards

by mail, the use of the mails 'played a significant part in enabling (appellants) . . . to acquire dominion over  . . . goods and services for which they did not pay." 494 F.2d at 826. "The purpose of the mail fraud statute . . . is 'to prevent the post office from being used to carry (schemes to defraud) into effect… .' *Durland v. United States,* 161 U.S. 306, 314" (1960). *Green,* 494 F.2d at 823. The mailing must be " 'a part of the execution of the fraud,' " [citing  *Kann* at 323 U.S. at 95] or " 'incident to an essential part of the scheme,' " [citing *Pereira v. United States,* 347 U.S. 1, 8 (1954)]. "The things caused to be mailed may be 'innocent in themselves' . . . as long as the mailing is 'a step in a plot.' "  *Green,* 494 F.2d at 824 (citing *Badders,* 240 U.S. at 394).  As the *Green* decision acknowledged, the Supreme Court in *Maze* rejected the government's "contention that the delay caused by use of the mails was essential to the continuation of the fraudulent credit card scheme." 494 F.2d at 824, citing *Maze*, 94 S.Ct. at 649-650.  See, also, *Evans v. United States,* 148 F.3d 477 (5th Cir. 1998) (that a mailing may be incident to a scheme does not make it incident to an essential part of the scheme).

In *United States v. Strong,* 371 F.3d 225 (2004), the defendant was convicted of mail fraud with respect to a scheme which involved the "fraudulent acquisition and sale of automobiles." The district court, however, entered a judgment of acquittal and the government appealed.  In *Strong,* there was "no question but that the government established both a fraudulent scheme, and the use of the mails." *Id.*

at 226. However, the question was whether the mailings of fraudulent applications for certified copies of original titles, which sustained the ongoing fraudulent scheme, were "sufficiently related to the fraudulent scheme itself to prove a violation of the mail fraud statute." *Id.* The Fifth Circuit held that the mailings were not sufficiently related and affirmed the district court's judgment of acquittal with respect to the mail fraud charges.

### IV.   Application of These Principles to the Face of This Indictment

Whether the subject cars were bought, borrowed, leased, or stolen, their manner of acquisition and maintenance is not sufficient to confer jurisdiction by virtue of the mailings. Accordingly, Counts 2-7 should be dismissed.

Respectfully submitted,

*Shirley Baccus-Lobel*
Shirley Baccus-Lobel
Law Office of Shirley Baccus-Lobel
A Professional Corporation
8350 Meadow Road, Suite 186
Dallas, Texas 75231
214.220.8460
sbl@lobellaw.com
Attorney for Defendant Price

## CERTIFICATE OF SERVICE

      I hereby certify that on October 31, 2016 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means: AUSAs Walt Junker, Katherine Miller, and Nick Bunch, 3rd Floor, 1100 Commerce, Dallas, Texas 75242; and all other counsel of record.

                                               */s/Shirley Baccus-Lobel*
                                               Shirley Baccus-Lobel