IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:14-Cr-293-M |
| | § | ECF |
| JOHN WILEY PRICE (1) | § | |
| | § | Hon. Barbara M.G. Lynn, Chief Judge |

## <u>MOTION TO DISMISS BRIBERY COUNTS 1-7 ON GROUNDS OF VAGUENESS AND FAILURE TO STATE THE OFFENSES ALLEGED</u>

Defendant PRICE, through counsel, moves this Court to dismiss Counts 1-7 of the indictment because (1) these bribery allegations fail to state offenses under either 18 U.S.C. 666 or 18 U.S.C. 1341 and 1346; and (2) the bribery allegations are based upon unconstitutionally vague applications of those statutes:

### <u>The Statutes</u>

1. **18 U.S.C. 666** provides:

   (a) Whoever, if the circumstances described in subsection (b) of this section exists [that is, "the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance"] –

   (1) *being an agent* of an organization, or of a State, local, or Indian tribal government, or any agency thereof –

   (A) embezzles, steals, obtains by fraud, or otherwise without authority *knowingly* converts to the use of any person other than the rightful owner or intentionally misapplies, property that –

       (i)      is valued at $5,000 or more, and

       (ii) is owned by, or is under the care custody, of control of such organization, government, or agency; or

    (B) ***corruptly*** solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or

  (2) ***corruptly*** gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of over $5,000 or more;

shall be fined under this title, imprisoned not more than 10 years, or both. [emphasis added]

             *        *        *        *

(d) as used in this section -

(1) the term **"agent"** means a person authorized to act on behalf of another person or government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative; [emphasis added]

(2) the term "government agency" means a subdivision of the executive, legislative, judicial, or other branch of government including a department, independent establishment, commission, administration, authority, bard, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program;

(3) the term "local" means of or pertaining to a political subdivision within a State;

2. **18 U.S.C. 1346** provides:

> For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

## The Bribery Allegations

3. **Count 1** alleges that a conspiracy to violate 18 U.S.C. 666 existed in this way: from October 2001 until June 27, 2011, the Defendant solicited and demanded from co-defendant Kathy Nealy and others "a stream of financial benefits" "intending to be influenced and rewarded in connection with any Dallas County business, transaction, and series of transactions involving anything of value of $5,000 or more, as specific opportunities arose" (*e.g.,* Doc. 1 at 11-12). **Counts 2-7** incorporate by reference the allegations in the indictment's Introduction and the allegations of Count 1 and thus **allege that honest services fraud** in violation of 18 U.S.C. 1341 and 1346 **occurred in the same way**.  Doc. 1 at 84-86.[1]

4. The **Introduction** to the indictment describes the Defendant in this way:

> Defendant **JOHN WILEY PRICE** was an elected County Commissioner of the Dallas County Commissioners Court for District 3 in Dallas County, Texas . . . from 1985 through the present. **Price** oversaw the daily operations

---

[1] Counts 2-7 incorporate by reference ¶¶s 1-23 of the indictment (¶297) and ¶¶s 31-92 and 95-296 (¶302). Paragraph 296 is the last purported overt act of the conspiracy. Paragraphs 24-30 charge the 18 U.S.C. 666 conspiracy; ¶31 begins the Manner and Means of that Conspiracy. Paragraphs 93 and 94 introduce the overt acts of the conspiracy.

of the Road and Bridge District 3. He was also actively involved in the decision-making related to and the direction of the County's information technology (IT) systems and services, serving on the County's IT Steering Committee that met regularly to discuss current IT issues, concerns, budgeting, and potential and upcoming IT projects and needs. The IT Steering Committee also received briefings from County departments, and it shared information with and made recommendations to the Commissioners Court."

Doc. 1 at 2 (¶4).

5. The preface to Count 1 states that

- "Dallas County was a local government that received benefits in excess of $10,000 in each of the consecutive one-year periods beginning October 1, 2000 and continuing through October 1, 2010, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance."

Doc. 1 at 11, ¶25.

And states further with respect to the Defendant:

- "As the Dallas County Commissioner for District 3, **Price** was an agent of Dallas County, Texas."

*Id.,* ¶26.

6. **Count 1** then describes the conspiracy offense:

From "about January 2001 and continuing through on or about June 27, 2011," the defendants "did **knowingly** combine, conspire, confederate, and agree together and with each other to give and receive **corrupt payments** in violation of" 18 U.S.C. 666(a)(1)(B) and 666(2).

Doc. 1 at 11, ¶27 (emphasis added).

7. **Counts 2-7** allege that the Defendant-

As a public official for Dallas County . . . owed a fiduciary duty to Dallas County and its citizens and was **prohibited by state law** from soliciting and accepting bribes as consideration for **his decision, opinion, recommendation, vote, or other exercise of discretion as a public servant or for violating a duty imposed by law** on him as a public servant, **duties explained in paragraphs six and seven** of the Introduction of this indictment.  Doc. 1 at 84 (¶298) (emphasis added)

**Paragraph 6** of the indictment (Doc. 1 at 3) states that Price took an "official oath" to

"preserve, protect, and defend the Constitution and laws of the United States and the Constitution and laws of the State of Texas as required by the Texas Constitution, Article 16, Section 1.  Included among the state and local laws that Price promised to uphold, and those applicable to County Commissioners, was Texas Penal Code, Section 36.02(a)(1) and (3), which provided, in part, that

> a person commits the offense of bribery if he intentionally and knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another: (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant; or  . . . (3) any benefit as consideration for a violation of a duty imposed by law on a public servant.

**Paragraph 7** of the indictment (Doc. 1 at 3) states: "Under these state laws and under his oaths of office, **Price** owed a duty of honest and faithful services to Dallas County, Texas and its citizens."

8.   The purported scheme to defraud pursuant to 18 U.S.C. 1341 and 1346, and

18 U.S.C. 2, is described as follows (Doc. 1 at 85):

[From January 2001 and continuing through June 27, 2011, the Defendant and Ms. Nealy] aided and abetted by each other and by others known and unknown to the Grand Jury, engaged in mail fraud, that is, they devised a Scheme and artifice to defraud and deprive Dallas County and its citizens

Of their right to the honest and faithful services of Commissioner **John Wiley Price** through the solicitation and payment of bribes and the concealment of material information. (emphasis in original)

9.   Each of Counts 2-7 describes a car payment by co-defendant Kathy Nealy.

Doc. 1 at 86. Under the heading "CORRUPT PAYMENTS AND BENEFITS TO PRICE," the indictment alleges that Ms. Nealy provided to the Defendant "full use" of the subject cars. Doc. 1 at 14 (¶33.b).  Counts 2-7 allege that the defendants **"knowingly"** caused the mails to be used. *Id.* at ¶303.

## Law Governing Federal Bribery Statutes

10.   Money and politics is a lawful dance, protected in our Constitutional system, with one exception: the actual exchange of a *quid* for a *quo* – this for that, the exchange of an official act for money.[2]  The evolution of federal bribery laws, as discussed below, make this clear. That evolution also makes clear that a more expansive reach runs afoul of Constitutional constraints. This multi-tentacled indictment – oaths of office, required disclosures, State law violations, "streams" and "opportunities" - obscures and short cuts the *quid pro quo* requirement of a bribery prosecution and otherwise invites a vague evaluation of an accusation which the law says must be entirely clear.

---

[2] Money is used throughout to embrace not only dollars but also those things which may be considered a *quid* under the laws governing bribery.

11.   "Public corruption" – a cry which at times can be more opportunistic than real, calculated to discredit an unpopular political figure or a political enemy – is dealt with in our system by citizens exercising their right to vote, and by the fourth estate, at least where it does its job. An indictment is the least preferred method for addressing "public corruption," for sound reasons. First, prosecutors are not immune to political pressures   from persons determined to "take down" an elected official who has become an adversary, who declines to be kept in line or otherwise stands in the way of the agendas of others, or whom others simply want to remove in order to advance other, more cooperative candidates. More important, prosecution of an elected official interdicts the will of the people. When the most powerful adversary on earth is brought to bear upon the people's office holder, the Constitutional design is very much at issue. It is *for these reasons that the courts demand exacting and clear standards when prosecutors would police the political system*. It is not born of any purpose to protect authentic corruption. Instead, this reticence is born of the need to protect that political system and its Constitutional design.

12.   Despite its extraordinary length and coverage of matters in a manner which is repeatedly suggestive, even argumentative at times, and despite years of investigation, this evidentiary indictment recounts very little if anything concerning the circumstances which obtain to any financial transactions involving the Defendant

and Ms. Nealy.   And yet, as the successful petitioner pointed out in *McDonnell v. United States*, 579 U.S.\_\_,   S.Ct.   (2016):   "Bribery has always meant receiving a 'reward' to '*pervert*' the judgment.' 1 Samuel Johnson, *A Dictionary of the English Language* (6th ed. 1785)."  Petitioner's Brief on the Merits at 30, No. 15-474.

13.   The federal statutes under which bribery charges against a public official may be brought are:  18 U.S.C. 201 *et seq.,* 18 U.S.C. 371, 18 U.S.C 666, 18 U.S.C. 1341 and 1346, and 18 U.S.C. 1951. The **evolution** of the law makes clear that the only corruption Congress may target is *quid pro quo* corruption **and** that the federal policing of local corruption has limits.

## 18 U.S.C. 666

Characterized in the case law as "the federal bribery" statute,[3] courts have long grappled with questions regarding its reach. See, *e.g.* the differing opinions expressed in *United States v. Lipscomb,* 299 U.S. 303 (5th Cir. 2002). Section 666 is a constitutional exercise of Congress' spending power.  *Sabri v. United States,* 541 U.S. 600 (2004); *Salinas v. United States,* 522 U.S. 52 (1997). That said, the courts continue to recognize that it can be applied in a manner which offends principles of federalism.

---

[3] *E.g., United States v. Richard,* 775 F.3d 287 (5th Cir. 2014).

## 18 U.S.C. 1346

Precision as to the reach of a criminal statute, as well as precision in that statute's application in a pleading, is required in order to prevent giving arbitrary enforcement powers to police, prosecutors, and juries. *Kolender v. Lawson*, 461 U.S. 352 (1983). Without this precision, a vague statute "encourages arbitrary and erratic arrests and convictions." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 (1971). This deficiency also permits "arbitrary and discriminatory application," *Grayned v. City of Rockford*, 408 U.S. 104 (1972).

After *McNally v. United States,* 483 U.S. 350 (1987) held that 18 U.S.C. 1341 was limited to the protection of money and property rights, and not the intangible right of the citizenry to good government, 18 U.S.C. 1346 was enacted to include within the meaning of a "scheme or artifice to defraud" a scheme "to deprive another of the intangible right of honest services."  Application of the "intangible right of honest services" in §1346 raised serious vagueness concerns, and in order to avoid these and at the same time honor the Congressional enactment, the Court confined §1346's reach to the enactment's "core concerns" bribes and kickbacks. *Skilling v. United States,* 561 U.S. 358, 363-366 (2010).

Confining the statute's reach to its core purposes was intended in part to avoid the perils of arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461U.S.

352, 357 (1983). 561 U.S. at 364, 366. The Court expressly rejected the government's arguments that the statute's core applications included **undisclosed** self dealing and **nondisclosure** of conflicting financial interest, because that reach would render the statute vague. *Id*. And yet, **assertions of non-disclosure** stand at the core of the accusation in this case.

Moreover, as the Court reasoned in *Skilling*, resolving ambiguity to constrain the reach of the statute was reinforced by the rule of lenity. *Id.* at 365 (citing *Cleveland v. United States,* 531 U.S. 12, 25). Significantly, the Court also was able to sustain the statute's constitutionality against a void for vagueness claim, at least as applied to its core purposes, because of the statute's *mens rea* requirement, citing *Screws v. United States,* 325 U.S. 91, 101, 104 (1945) (clarifying the import of willful violations in criminal statutes, ordinarily "an act done with a bad purpose"; specific intent: "[o]ne who does act with such specific intent is aware that what he does is precisely that which the statute forbids"). 561 U.S. at 366. Yet, in this case, the allegations of ***mens rea*** are woefully inadequate to the subject matter.  Count one alleges a "knowing" violation, even though the statute requires that the person have acted "corruptly".  Counts 2-7 likewise allege mere "knowing" violations, a standard of scienter inadequate to the subject matter as *Skilling's* analysis makes clear.

**There Must Be a Quid and There Must Be a Quo and The Two Must Be Tethered**

The federal bribery statutes reach *quid pro quo* corruption. That is the standard whether the statute is applied to a federal official, a state official, or a local official. *United States v. Sun-Diamond Growers of Cal.,* 526 U.S. 398 (1999).  The *quid pro quo* requirement assures that the prosecutorial power does not intrude upon the political process in an unconstitutional manner.

This indictment is an unconstitutional application of 18 U.S.C. 666, by virtue of its broad reach of "official acts" and its unprecedented implementation of "streams of benefits as opportunities arose" theory of public corruption prosecution.  To the extent that it applies a more far-reaching and less clear theory of prosecution, it also offends principles of federalism by applying to state and local officials more rigorous standards of public corruption than would be applied in the case of federal officials.

In *McDonnell v. United States,* 579 U.S.__,__S. Ct.__ (2016), the Court again confronted challenges to the federal bribery statutes. The Court rejected the broad reach of "official acts" advocated by the government as a "standardless sweep" [citing *Kolender,* 461 U.S. at 358] which would encourage arbitrary and discriminatory enforcement against public officials. The Court's "more constrained interpretation" of "official acts" "comports with the Constitution's guarantee of due process" and "avoids this 'vagueness shoal' " (citations omitted). This indictment

expressly includes as a central thrust (B. BENEFITS TO OTHER PERSONS

CORRUPTLY SOLICITED AND DEMANDED BY PRICE) these type broad

assertions of official acts: recommending people for jobs, vouching for minority

subcontractors. Doc. 1 at 18, ¶39.b and c.

The Court concluded in *McDonnell* that the "Government's position also

raise[d] significant federalism concerns."

> A State defines itself as a sovereign through "the structure of its
> Government, and the character of those who exercise government
> authority." *Gregory v. Ashcroft,* 501 U.S. 452, 460 (1991). That
> includes the prerogative to regulate the permissible scope inter-
> actions between state officials and their constituents. Here, where
> a more limited interpretation of "official act" is supported by both
> text and precedent, we decline to "construe the statute in a manner
> that leaves its outer boundaries ambiguous and involves the Federal
> Government in setting standards of "good government for local and
> state officials." *McNally v. United States,* 483 U.S. 350, 360 (1987);
> see also *United States v. Enmons,* 410 U.S. 396, 410-411 (1973)
> (rejecting a "broad concept of extortion" that would lead to "an
> unprecedented incursion into the criminal jurisdiction of the States").

There can be little doubt that this indictment, with its numerous assertions of state

and local laws and legal requirements represents a blatant example of just such an

"incursion into the criminal jurisdiction of the States."

The Court also found that "the Government's expansive interpretation of 'official

act' would raise significant constitutional concerns." Because the federal bribery

statute "prohibits *quid pro quo* corruption - the exchange of a thing of value for an

official act[,]" to "count" "nearly anything a public official does . . . as a *quo*" would undermine representative democracy. Finding the jury instructions inadequate to convey the more constrained meaning of official acts properly within the reach of the federal bribery statutes, the Court reversed the Virginia's Governor's convictions.

14.   The indictment in this case does not state offenses within the constraints of the federal bribery statutes. As a consequence, those statutes are applied here in a unconstitutionally vague and unclear manner. The indictment's boundaries are unclear. It does not even purport to tether *quids* and *quos*. The indictment also does not properly allege the *mens rea* elements. It plainly offends principles of federalism, particularly in view of its "unprecedented incursion into the criminal jurisdiction of the States."

For the reasons stated, it is respectfully submitted that the Defendant's motion to dismiss Counts 1-7 should be granted.

Respectfully submitted,

*Shirley Baccus-Lobel*
Shirley Baccus-Lobel
Law Office of Shirley Baccus-Lobel, PC
8350 Meadow Road, Suite 186
Dallas, Texas 75231
214.220.8460
214.987.3169 (f)
sbl@lobellaw.law

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically submitted to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means: AUSA's Walt, Katherine Miller, and Nick Bunch 3rd Floor, 1100 Commerce, Dallas, Texas 75242, and all counsel of record.

*/s/ Shirley Baccus-Lobel*
Shirley Baccus-Lobel