IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.    § | Cause No. 3:14-Cr-293-M |
| § | ECF |
| JOHN WILEY PRICE (01)    § | |
| KATHY NEALY (02)    § | |
| DAPHENY FAIN (03)    § | |

**DEFENDANTS' JOINT RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE EXPERT WITNESS AND REQUEST FOR A F.R.E. 702 AND 704 HEARING**

Defendants, through counsel, respectfully submit this response to the government's motion *in limine* to exclude the testimony of Chris J. Dellinges, or in the alternative, request for a F.R.E. 702 and 704 hearing. Specifically, Defendants move this Court to find Chris Dellinges a qualified expert and allow him to testify to his factual findings and conclusions, based upon his knowledge, skill, and experience, of tax issues that prevent the government from proving all the elements of the underlying tax offense, which affects Counts 8-11.

I.   **INTRODUCTION**

The government filed a motion *in limine* to exclude the testimony of Chris Dellinges, or in the alternative, to request a F.R.E. 702 and 704 hearing to determine whether Mr. Dellinges is qualified as an expert and whether his testimony is relevant and reliable. The government failed to state specific reasons why Mr. Dellinges is not an expert and why his opinion is unreliable. Rather, the government suggested that the Court rely exclusively on non-mandatory factors in assessing the reliability of Mr. Dellinges's opinion. The government failed to acknowledge the

sufficient facts and reliable methodology cited to in Mr. Dellinges's forensic report as the basis of his opinion that no valid tax returns were filed for John Wiley Price for the years 2007-2009.

## II. APPLICABLE LAW

The admissibility of all expert testimony is governed by the principles of Federal Rules of Evidence 104(a). Under the Rule, the proponent of the expert testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States,* 483 U.S. 171 (1987). In determining whether to exclude expert testimony, the Court must look to Federal Rules of Evidence 401 and analyze whether proffered expert testimony is relevant. Federal Rules of Evidence 403 must also be considered when analyzing an expert's testimony. Next, the Court must consider Federal Rules of Evidence 702 in analyzing the reliability of an expert's opinion. The three criteria courts use in doing so are as follows: (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. FED. R. EVID. 702(b)-(d).

The expert is permitted to testify and provide the inference necessary to connect the testimony to the specific facts of the case and draw the conclusion proposed by the proponent of the witness. However, the expert cannot unjustifiably extrapolate from an accepted premise an unfounded conclusion. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (reasoning that a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). The expert is permitted to give his or her opinion on an ultimate issue, pursuant to the restrictions of Federal Rules of Evidence 704.

The judge must determine whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert*

*v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 588 (1993); FED. R. EVID. 702. The Supreme Court did not provide a definitive checklist, but instead gave only a list of factors *to consider:* (1) whether the theory or technique can be or has been scientifically tested; (2) whether the theory or technique has been subject to peer review and publication; (3) the error rate of a particular technique; and (4) acceptance of the theory in the scientific community. *Id.* at 592. The factors are flexible and are applicable on a case-by-case basis depending upon the nature of the issue, the expert's area of knowledge, and the subject of the testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999); *see United States v. Hicks,* 389 F.3d 514, 525 (5th Cir. 2004). The Supreme Court has instructed that vigorous cross examination, presentation of conflicting evidence, and careful instruction on the burden of proof are the appropriate means of contesting otherwise admissible evidence. *Daubert,* 509 U.S. at 596.

### III.  ANALYSIS

#### a. The Government Makes Inaccurate Assertions Regarding F.R.E. 702 To Aid Its Unfounded Attacks on Mr. Dellinges's Qualifications.

Before the Court may consider the qualifications and reliability of Mr. Dellinges's expert opinion, it must be determined that the "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Here, Mr. Dellinges's testimony will help the jury understand a fact in issue: whether tax returns were validly filed, such that the government can prove an essential element of the alleged substantive tax offenses, which is required for the government to prove Counts 8-11.

Next, the Court may consider the reliability of the expert's testimony. While the government correctly cites to the *Daubert* factors as non-mandatory and non-exclusive, it asks the Court to adopt its unfounded analysis of Mr. Dellinges's expert qualifications, which considers only the *Daubert* factors. The government generally states that it will be able to show that Mr.

Dellinges's conclusions "have not been tested, have not been subjected to peer review and publication, contain known errors that deviate from accepted standards, and that his conclusions have not been generally accepted." Gov't Mot. to Exclude Expert Witness or for a F.R.E. 702 and 704 Hearing, 7, Dec. 12, 2016, ECF No. 374. It does not make any specific challenges to the reliability of Dellinges's opinions.

    b. **The Government Improperly Invokes the Court's "Gatekeeping" Role in Its Effort to Exclude the Testimony of Mr. Dellinges.**

The court must act in a "gatekeeping" role to insure an expert's testimony is reliable and relevant. *Daubert* 509 U.S. at 592. In *Daubert,* the Court stressed that in each case, the judge should exercise discretion when determining what criteria it uses to assess the reliability of the underlying principles and methods on which an expert relies. *Id.* at 593-597. A court's "gatekeeping" role is not limited to "scientific" testimony. *Kumho*, 526 U.S. at 152. Federal Rules of Evidence 702 further requires that the evidence or testimony "'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591 (quoting FED. R. EVID. 702).

    c. **Mr. Dellinges's Vast Knowledge and Experience of Financial and Tax Matters, Including Nearly 40 Years of Practicing as a Certified Public Accountant and Testifying in Other Federal Criminal Trials, Gives Him Specialized Knowledge That Will Assist The Trier of Fact.**

The Fifth Circuit, in a recent opinion, stated it has "never required formal educational credentials to qualify a witness as an expert, and even 'the advisory committee notes to Rule 702 state that experience in the field can be the predominant, if not the sole, basis for expert testimony in some cases.'" *United States v. Haines,* 803 F.3d 713, 727 (5th Cir. 2015) (quoting *United States v. Ceballos*, 302 F.3d 679, 686 (7th Cir. 2002)). Mr. Dellinges is not an expert in tax law, nor does defense counsel purport him to be one. Rather, defense counsel designated Mr. Dellinges as a

forensic accountant expert to investigate the federal tax returns of John Wiley Price for the years 2007-2009. Mr. Dellinges is a Certified Public Accountant and has considerable experience after 39 years working in the field of accounting and forensic accounting. Forensic Accountant's Report, pp. 6-7, Dec. 12, 2016, ECF No. 375-1. He has specialized knowledge and experience in complex forensic accounting and intricate white-collar and tax investigative matters. *Id.* He has provided consulting and expert witness services in other federal criminal trials as to various financial and tax matters. *Id.* Mr. Dellinges is certainly qualified by means of experience, knowledge, education, and skill in forensic accounting.

> **d. Mr. Dellinges's Expert Opinion Is Based on Sufficient Facts and Reliable Principles Because It Is Based On Application of Requirements and Consequences Created By The Internal Revenue Service.**

Mr. Dellinges's expert opinion is based on sufficient facts and a reliable methodology because it is a direct regurgitation of the requirements and consequences for tax preparers of not meeting the requirements contained in the I.R.S. Handbook for Authorized I.R.S. e-file Providers of Individual Income Tax Returns. *See* I.R.S. Publ'n 1345. There is no "analytical gap between the data and the opinion proffered." *See Burleson v. Tex. Dep't of Criminal Justice,* 393 F.3d 577, 587 (5th Cir. 2004) (internal citation omitted). Mr. Dellinges intends to testify to common knowledge of what is required of every Certified Public Accountant who electronically files a client's tax return, pursuant to the direct language provided in the I.R.S. Handbook for C.P.A.s. *See* I.R.S. Publ'n 1345, 20-21.

The I.R.S. Handbook is a manual that instructs C.P.A.s on I.R.S. requirements for e-filing tax returns. The applicable section of the Handbook has detailed requirements for electronically filing a tax return for a client, particularly by signing a Form 8879. *See id.* The Handbook states that "when taxpayers are unable to enter their PIN directly in the electronic return, taxpayers

authorize the Electronic Return Originator (ERO) to enter their PINs in the electronic return record by signing the appropriate *completed* I.R.S. e-file signature authorization form." *Id.* (emphasis added). That form is the Form 8879, which authorizes the ERO to enter the taxpayers' PINs on individual income tax returns. The Handbook goes on to state that "the taxpayer must sign and date the . . . Form 8879 after reviewing the return and ensuring the tax information on the form matches the information on the return." *Id.*

It explains that there are two methods of signing individual income tax returns with an electronic signature. *Id.* at 20. First, is the "Self-Select PIN method" which requires taxpayers to provide their prior year Adjusted Gross Income amount or prior year PIN. *Id.* Taxpayers may enter their own PIN directly into the electronic return record or may authorize EROs to enter their PIN on their behalf, only after reviewing and signing a completed signature authorization form after reviewing the return. *Id.* Second, is the "Practitioner PIN method," in which the taxpayer must also sign a completed signature authorization form before the Practitioner or the Taxpayer enters the PIN. *Id.* Regardless of the method of electronic signature used, "taxpayers may enter their own PINs; EROs may select and enter the taxpayers' PINs; or the [ERO's tax preparation] software may generate the taxpayers' PINs; in the electronic return." *Id*. But the taxpayer must agree, after reviewing the return, by signing the Form 8879 containing the PIN. *Id.*

The Form 8879 also lists the four ways that a Form 8879 can be completed. *See* I.R.S. Form 8879 (2016) (same requirements on each form for the years 2007-2009). They are as follows: (1) If the ERO is not using the Practitioner PIN method and the taxpayer enters his or her own PIN, then the ERO does not need to complete Form 8879; (2) If the ERO is using the Practitioner PIN method and is authorized to enter or generate the taxpayer's PIN, then the ERO must complete Form 8879, Parts I, II, and III; (3) If the ERO is using the Practitioner PIN method and the taxpayer

enters his or her own PIN, then the ERO completes Form 8879, Parts I, II, and III; and (4) If the ERO is not using the Practitioner PIN method and is authorized to enter or generate the taxpayer's PIN, then the ERO completes Form 8879, Parts I and II. *See id.* The taxpayer is required to (1) verify the accuracy of the prepared income tax return; (2) check the appropriate box in Part II to authorize the ERO to enter or generate his or her PIN or do it themselves; (3) indicate or verify his or her PIN when authorizing the ERO to enter or generate it; (4) sign and date Form 8879; and (5) return the complete Form 8879 to the ERO. *See id.*

Electronic signatures on tax returns are permitted and the Secretary may waive the requirement of an electronic signature, but that does not negate the requirement of a signed Form 8879 for the tax preparer to electronically file the taxpayer's returns. *See* I.R.S. Notice 2007-8, I.R.B. 2007-42 ("Section 6061 of the Internal Revenue Code and Treas. Reg. § 1.6061-1(a) generally provide that any tax return, statement, or other document shall be signed in accordance with forms, instructions, or regulations prescribed by the Secretary. Publication 1345, Handbook for Authorized I.R.S. e-file Providers of Individual Income Tax Returns, sets forth the procedures for completing the Form . . . 8879."). The Notice goes on to state that "this notice does not alter the requirement that Form . . . 8879 be signed by the taxpayer making these forms by handwritten signature or other authorized means." *Id.* The notice is applicable to any Form 8879 filed on or after October 15, 2007. *Id.*

Without a signature, the tax returns filed for the years 2007-2009 are not valid tax returns. Internal Revenue Code Section 6061 explicitly states that a return must be signed in accordance with forms or regulations prescribed by the Secretary. I.R.C. § 6061(a). The taxpayer's tax return must be signed and contain a written declaration that the return was made under penalties of perjury. *See Doll v. Comm'r*, 24 T.C.M. (CCH) 995, 5 (1965).  If the tax return is unsigned it is

not a "return" for the purpose of starting the running of the statutory period of limitations on assessment of tax deficiencies or avoiding penalties. *Id.; see Reaves v. Comm'r,* 31 T.C. 690, 713 (1958), *aff'd.* 295 F. 2d 336 (5th Cir. 1961); *Dixon v. Comm'r,* 28 T.C. 338, 347 (1957); *Plunkett v. Comm'r,* 41 B.T.A. 700, 711 (1940), *aff'd.* 118 F. 2d 644 (1st Cir. 1941); *Lucas v. Pilliod Lumber Co.,* 281 U.S. 245, 249 (1930). The Fifth Circuit has also held that a filed return that is not properly signed is "deprived of legal effect." *Selgas v. Comm'r* 475 F.3f 697, 700-01 (5th Cir. 2007); *see Brafman v. United States,* 384 F.2d 863, 868 (5th Cir. 1967) ("Certainly the courts have not hesitated to enforce strictly the Code requirement that a taxpayer's returns must be signed to be effective."); *Reaves v. Comm'r,* 295 F.2d 336, 338 (5th Cir. 1961) ("Without a signature it can hardly be said that a return contained or was verified by a written declaration that it is made under the penalties of perjury as required by the Internal Revenue Code.").

> e. **There Is No Bar To An Expert Opining As To The Ultimate Issue Under *Federal Rules of Evidence 704*; Therefore, Mr. Dellinges May Give His Opinion That Because There Is No Signature on The Form 8879, There Is No Valid Tax Return For Years 2007-2009.**

Federal Rules of Evidence 704 allows Mr. Dellinges to testify as to ultimate issues in the case, and is distinguishable from case law cited by the government, because there is a factual dispute as to whether Russell Baity filed valid tax returns for John Wiley Price. *See Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 240 (5th Cir. 1983) (holding that a question posed by defendant's attorney to an expert was improper because it sought the expert's opinion as to the legal, not factual, cause of the accident and there was no dispute as to the factual cause of the accident). Mr. Dellinges is not testifying to a legal conclusion that is attenuated from the facts presented in this case. He is testifying that because there is a fundamental error in each tax return for John Wiley Price for the years 2007-2009, there were no valid electronically filed tax returns. This is not a conclusion he is coming to on his own. It is the conclusion he made after reviewing hundreds of

documents, particularly tax returns for John Wiley Price for the years in question, and is based primarily on the fact that those returns lacked an essential requirement of a validly filed tax return: a signed Form 8879. It is well established that without a signed Form 8879, the tax preparer cannot electronically file the tax return, and if the tax return is filed without a signature, it is an invalid tax return and is treated as null.

### f. Mr. Dellinges Has Reliably Applied The Principles Established By The Internal Revenue Service To The Facts In This Case.

Mr. Dellinges's opinion that John Wiley Price's returns "fail to meet the fourth prong of the Beard standard" and that they are legally invalid returns and "as such, they are null, and as if no return had been filed" is clearly laid out in case law, particularly from the Fifth Circuit. Forensic Accountant's Report, pp. 6-7, Dec. 12, 2016, ECF No. 375-1; *see Selgas,* 475 F.3d at 700-01; *Brafman,* 384 F.2d at 868; *Reaves,* 295 F.2d at 338. Mr. Dellinges's reliance on *Beard v. Comm'r* is not simply founded in the fact that it is legally impossible for a tax preparer to validly file an electronic tax return without a taxpayer signed Form 8879. *See* 82 T.C. 766, 777 (1984), *aff'd per curiam,* 793 F.2d 139 (6th Cir. 1986). While it is true that *Beard* is cited for its requirements for a validly filed tax return for statute of limitations purposes of prosecution under a tax offense, particularly that a tax return must be executed by the taxpayer under penalties of perjury, it is not used only to state that a taxpayer must sign his or her tax return for it to be valid. Rather, it is used in combination with the I.R.S.'s requirement that the taxpayer sign or authorize his or her tax preparer to sign the electronically filed tax return. Here, the applicable form to sign to electronically file a valid tax return is Form 8879. That form was never signed by John Wiley Price or Russell Baity, his C.P.A. and tax preparer for the years at issue.

The government cites to *United States v. Lawrence,* a case in which the Sixth Circuit upheld the district court's denial of Lawrence's motion for acquittal on the basis that Lawrence did sign

the Form 8879, because of the presence of his PIN on the e-filed returns for the years in question. 557 Fed. Appx. 520, 530 (6th Cir. 2014). Lawrence never contested whether he "made" the tax returns, *i.e.,* filed the returns; rather, he argued that he did not "subscribe" or sign the returns. *Id.* at 529-530. Lawrence also argued that because the Form 8879 was never entered into evidence during the trial, there was no evidence that a signed Form 8879 was ever filed with his tax returns. *Id.* at 529.

Lawrence did not dispute the fact that his PIN was on the returns or that he authorized his C.P.A. to e-file his returns by entering his PIN as his signature for the e-filed returns. *Id.* at 530. He contested the subscription element of the Form 8879 by arguing that the taxpayer must file his tax returns with his PIN. *Id.* at 530. The court held that the PIN present on his forms functioned as his signature and provided sufficient basis that Lawrence subscribed his name to the tax returns. *Id.* at 530.

Those facts are distinguishable from the facts in this case. Here, John Wiley Price never signed the Form 8879—there is no PIN entered on any of his tax returns for the years 2007-2009. Further, there is no date entered on any of the forms for the years 2007-2009. There is no proof that the subscription element was met by John Wiley Price authorizing Russell Baity to sign his name on his tax returns because no one, not John Wiley Price nor Russell Baity, actually entered John Wiley Price's individual PIN (either chosen by John Wiley Price or generated by Russell Baity through his tax return software) or Russell Baity's practitioner PIN on the returns. *See Lawrence,* 557 Fed. Appx. at 530; *see also United States v. Ponder,* 444 F.2d 816, 822 (5th Cir. 1971) (holding that there was proper authorization to sign the defendant's tax return when the defendant was an attorney and his secretary prepared and signed his tax return over a period of weeks and the defendant had previously been under I.R.S. scrutiny). Without a signature, by means

of entering a PIN and date onto the Form 8879, the subscription element cannot be met for the tax returns for the years 2007-2009. Mr. Dellinges should be qualified as an expert and be permitted to testify to this factual issue because it is one that the trier of fact would not ordinarily be able to resolve without specialized assistance. *United States v. Haines,* 803 F.3d 713, 727 (5th Cir. 2015) (citing FED. R. EVID. 702).

## IV.   CONCLUSION

For the foregoing reasons, defense counsel respectfully requests the Court to qualify Mr. Dellinges as an expert and admit his proffered testimony as reliable expert testimony, without a hearing.

Respectfully submitted,

   /s/ *Thomas W. Mills, Jr.*
THOMAS W. MILLS, JR.
State Bar No. 14167500
MILLS & WILLIAMS, L.L.P.
Premier Place, Suite 980
5910 N. Central Expressway
Dallas, Texas 75206-5141
tmills@millsandwillilams.com
214-265-9265
214-363-3167 - fax
Attorney for Dapheny Fain

*Shirley Baccus-Lobel*
Law Office of Shirley Baccus-Lobel
A Professional Corporation
8350 Meadow Road, Suite 186
Dallas, Texas 75231
214.220.8460
214.987.3169 (f)
sbl@LobelLaw.com
Attorney for John Wiley Price

*Cheryl Brown Wattley*
Law Offices of Cheryl B. Wattley
3737 Atlanta Street
Dallas, Texas 75215
214.882.0855

DEFENDANTS' RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE EXPERT WITNESS AND REQUEST FOR A F.R.E. 702 AND 704 HEARING Page | 11

Cheryl.brown.wattley@gmail.com
Attorney for Kathy Nealy

CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2016, I electronically filed the foregoing instrument, using the ECF system of this Court. A copy of this instrument is being provided to all counsel of record via the ECF system of the court.

/s/ *Thomas W. Mills, Jr.*
THOMAS W. MILLS, JR.