IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:14-Cr-293-M |
| | § | ECF |
| JOHN WILEY PRICE (1) | § | Hon. Barbara M. G. Lynn, Chief Judge |

## DEFENDANT PRICE'S MOTION FOR JUDGEMENTS OF ACQUITTAL WITH RESPECT TO COUNTS 1-7 AT THE CLOSE OF THE PROSECUTION'S CASE-IN-CHIEF

Defendant Price, through counsel, submits this motion for judgments of acquittal at the conclusion of the government's case-in-chief, pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution and Rule 29(a) of the Federal Rules of Criminal Procedure, and in support of the motion would show that the government's evidence is constitutionally insufficient to sustain its burden with respect to the indictment allegations:

## DEFICIENCIES OF PROOF

I.   **Count 1**: Conspiracy to Violate 18 U.S.C. 666, in violation of 18 U.S.C. 371 [solicitation and receipt of bribes]

   **Allegations:**

   - The indictment alleges that "Dallas County was a local government that

received benefits in excess of $10,000 in each of the consecutive fiscal one-year periods beginning October 1, 2000 and continuing through October 1, 2010, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance" **and**

- that there existed a 10 ½ year conspiracy "to give and receive corrupt payments in violation of" 18 U.S.C. 666(a)(1)(B) and 666(2); alleging further that Defendant Price "did corruptly solicit and demand for the benefit of any person, and accept and agree to accept things of value through a stream of financial benefits [from Nealy, Campbell, and others] . . . intending to be influenced and rewarded in connection with any Dallas County business, transaction, and series of transactions involving anything of value of $5,000 or more, as specific opportunities arose," in violation of 18 U.S.C. 666(a)(1)(B), **and**

- that Nealy, Campbell and others "did corruptly give, offer, and agree to give things of value through a stream of financial benefits, directly and indirectly, to Price with the intent to influence and reward Price in connection with any Dallas County business, transaction, and series of transactions involving anything of value of $5,000 or more, as specific

opportunities arose, in violation of" 18 U.S.C. 666(a)(2); all in violation of 18 U.S.C. 371.  Doc. 1 at 11-12, 83.

## Deficiencies

### *Burden Shifting*

The government's case-in-chief is deficient because it rests upon transactions (payments from Kathy Nealy to Commissioner Price) without any showing about the nature of the financial transaction between Commissioner Price and Kathy Nealy. The government's contention that the payments were bribes (a "stream of financial benefits" "as opportunities arose") is an assertion, not proof. It is not sufficient to show that there were (1) payments and (2) pending County matters (leaving aside the question whether those so-called "opportunities" were official acts). Payments by Nealy to Commissioner Price (a "stream of benefits" over years) + pending County matters ("opportunities" that may arise) does not = bribe. The prosecution offered no evidence about the nature of any financial dealing between Commissioner Price and Nealy and instead relies upon an inference that any payments are *ipso facto quids* for *quos* (official acts) – that is to say, bribes.

This can only be accomplished by shifting to the Defendant the burden to prove the other side of the financial transaction (*e.g.,* the basis for the payment). But the government may not shift the burden of proof, because it violates the

due process requirement that the government establish each element of the offense beyond a reasonable doubt. *In Re Winship,* 397 U.S. 358 (1970). *E.g, Mullaney v. Wilbur,* 421 U.S. 684 (1975); *Sandstrom v. Montana,* 442 U.S. 510 (1979). In any situation, a payment can be for a number of purposes. Add to the equation ***the facts*** that these are two people who are close and have known one another most of their adult lives, and there are numerous possibilities which could account for payments by Ms. Nealy to Commissioner Price. And, yet, the government has offered none.

The prosecution has introduced evidence that steadily, over a lengthy period of many years, payments were made to the Defendant Price by Ms. Nealy, his friend of 40 years. The payments are alleged to have been bribes, awaiting an opportunity for official action on Commissioner Price's part. Leaving aside for the moment fact-based arguments which could be made against this construction of their relationship, what is clear is this: the government did not ascertain proof of what the payments were for or, conversely, proof that the payments were bribes. You can allege an item is counterfeit, but you bear the burden to prove that it is fake. You can allege that a river is polluted, but you bear the burden to prove the pollution. You can allege that an aircraft part was defective, but you bear the burden to prove the defect. And in a criminal case, that burden of proof is a constitutional requirement.

## *Conspiracy*

A series of alleged offenses does not a conspiracy make. A conspiracy is an agreement. A conspiracy is an agreement. "In a conspiracy charge, the term 'agreement' is all but synonymous with the conspiracy itself, and as such has great operative force. "We held in *Braverman v. United States,* 317 U.S. 49, 53 (1942), that '[t]he gist of the crime of conspiracy as defined by the statute is the agreement. . . to commit one or more unlawful acts,' from which it follows that 'the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects.'" *United States v. Broce* 488 U.S. 563, 570. (1989).

A conspiracy cannot exist "without at least the degree of criminal intent necessary for the substantive offense itself." *Ingram v. United States,* 360 U.S. 672, 679 (1959). In fact, as regards conspiracy there are two levels of intent: the intent to further the unlawful purpose, and the intent required for the underlying offense. *United States v. Brooks,* 681 F.3d 678, 699 (5th Cir. 2012). There must be not only clear and unequivocal knowledge of the unlawful objective but a voluntary objective to join the conspiracy with a specific intent to defraud - "conscious knowing intent to defraud". *Id.* at 699-700.

### The Government's Proof Abridges the Principles Articulated in Cleveland, Skilling and McDonnell

The prosecution's substantial reliance upon internal Dallas County policies or practices regarding no-contact and confidentiality provisions is precisely the sort of invalid theory of prosecution condemned by the Supreme Court in *Cleveland v. United States*, 531 U.S. 12, 25 (2000), with respect to the use of regulatory and licensing transgressions in support of mail and wire fraud prosecutions. As *Skilling v. United* State, 561 U.S. 358, 364-366 (2010) and *McDonnell v. United States,* 579 U.S.__ (2016) make clear, that reticence squarely applies to use of bribery and honest services fraud in order to prosecute disclosure and conflict of interest and self-dealing transgressions. One can literally measure that reliance here, given the incessant mantra of the government's invocation of "no contact" provisions in contracts and references to confidentiality and conflict of interest provisions. These numerous references effectively became an independent gravamen of the offense  of  count  one (conspiracy), and a primary source used by  the prosecution to demonstrate wrongful conduct on the Defendant's part.

### The $5,000 requirement is not met with respect to the Foreign Trade Zone [FTZ]

The evidence presented by the prosecution does not satisfy the requirement to demonstrate the existence of  "any Dallas County business, transaction, and series of transactions involving anything of value of $5,000 or more" with respect to the Foreign Trade Zone.

II.     **Counts 2-7** allege the Defendants Price and Nealy executed a scheme to "defraud and deprive Dallas County and its citizens of their right to the honest and faithful services of Commissioner John Wiley Price through the solicitation and payment of bribes and the concealment of material information" by having "caused matters and things to be delivered by the United States Postal Service" [car and vehicle payments, October 2 and November 23, 2009; and July 1 and 16, November 1, and December 10, 2010], and aiding and abetting, in violation of 18 U.S.C. 1341 and 1346, and 2.  Doc. 1 at 84-86.

**The Mailings**

KLNA, the indictment states, is Kathy L. Nealy & Associates, one of Ms. Nealy's businesses. Doc. 1 at page 4, ¶10. The mailing in each of the 6 counts is a check for a monthly car payment, and each KLNA check is drawn on KLNA's account #1364 at Bank of America:

| Count | Date | Mailed Check |
|---|---|---|
| 2 | October 2, 2009 | A **"BMW monthly car payment"** ($ 1,558.87**)** |
| 3 | November 23, 2009 | A "BMW monthly car payment" ($ 1,632.75) |

| Count | Date | Mailed Check |
|---|---|---|
| 4 | July 1, 2010 | A "Chevrolet Avalanche monthly vehicle payment" ($ 687.85) |
| 5 | July 16, 2010 | A "Chevrolet Avalanche monthly vehicle payment" |

($ 687.85)

| 6 | November 1, 2010 | A "Chevrolet Avalanche monthly vehicle payment" ($ 756.63) |
| 7 | December 10, 2010 | A "Chevrolet Avalanche monthly vehicle payment" ($ 687.85) |

The indictment asserts that the Defendant and Ms. Nealy, aided and abetted by one another, caused these car payments to be delivered. The indictment incorporates by reference most of Count 1, which includes the assertion that these automobiles were benefits provided to the Defendant by Ms. Nealy.  Doc. 1 at ¶¶s 33.b, 34.

**Deficiencies**

In addition to the deficiencies set forth with respect to Count 1, which are incorporated into the alleged honest services scheme to defraud in Counts 2-7, the government's proof fails to establish that the mailings were anything more than peripheral to the purported scheme. "In order to convict a defendant of mail fraud, the government must prove, inter alia, that the mails were used in furtherance of a scheme to defraud; this element is the basis of federal jurisdiction." *United States v. Pepper,* 51 F.3d 469, 474 (5th Cir. 1995). See, also, *United States v. Traxler,* 764 F.3d 486 (2014); *United States v. Vontsteen*, 872 F.2d 626 (5th Cir. 1989) (no jurisdictional basis for mail fraud). It is appropriate to raise a jurisdictional defect at any point in the proceeding. And it is incumbent upon courts to inquire whether

jurisdiction exists to proceed. "[I]t is incumbent upon federal courts - trial and appellate - to constantly examine the basis for jurisdiction, doing so on [their] own motion if necessary."  Save the Bay, Inc. v. United States Army, 639 F.2d 1100, 1102 (5th Cir. 1981).  See also *Bender v. Williamsport Area School District,* 475 U.S. 534, 541 (1986).  The evidence of payment mailings for Ms. Nealy's vehicles is insufficient as a matter of law, because the purpose of the mailing must be to execute the scheme to defraud and that is not shown by the evidence which has been presented. Continued payment for a conferred benefit cannot satisfy the requirement that the mailing must execute the scheme.

In *Parr v. United States,* 363 U.S. 370 (1960), the defendants obtained from an oil company gas and services for their personal use by using school district credit cards. The alleged use of the mails was submission of invoices for these items to the school district.  The Court held that no use of the mails to execute a scheme to defraud within the meaning of 18 U.S.C. 1341 had occurred, noting that the mailings themselves were not false representations to obtain money. *Id.* at 391-92. The mailings were **peripheral to the scheme,** neither " 'incident to an essential part of the scheme,' " (citing *Pereira v. United States,* 347 U.S. 1, 8) nor " 'a step in a plot' " (citing *Badders v. United States,* 240 U.S. 391, 394 (1916). *Id.* at 390 [emphasis added]. Applying its decision in *Kann v. United States,* 323 U.S. 88 (1944), the Court concluded that the mailings were not in execution of the

scheme.

In *Kann,* the petitioner and others were indicted for use of the mails in execution of a scheme to defraud. The indictment alleged that officers of a publicly held corporation (and others) diverted to another company they controlled a portion of the profits on government contracts and distributed those diverted profits to themselves.  Specifically, the mail fraud counts alleged that the defendants had used the other company to divert the profits to themselves and had used those diverted profits to pay bonuses to themselves.  The subject mail fraud counts "charged that the defendants, for the purpose of executing the scheme, caused to be delivered by mail check[s]" in favor of the defendants.  *Id.* at 90-91.  However, as the court concluded, these mailings did not execute the scheme to defraud.

Similarly, in *United States v. Maze,* 414 U.S. 395 (1974), the defendant stole and repeatedly used a credit card. Invoices for the fraudulent charges were mailed to the issuing financial institution. The Court concluded that the mailings were not "sufficiently closely related to [the defendant's] scheme," even if it were assumed that he had caused the mailings.  The Court distinguished its decision in *United States v. Sampson,* 371 U.S. 75 (1962).  In *Sampson,* the government appealed the district court's dismissal of mail fraud counts for failure to state an offense, in reliance upon the *Kann* and *Parr* decisions.  In *Sampson,* although the defendants had obtained the monies by fraud prior to the mailings, the Court concluded the

mailings were nevertheless integral to the scheme to defraud because the indictment alleged those mailings "lulled" the victims into a false sense of security.  Thus, "[m]ailings occurring after receipt of the goods obtained by fraud are within the statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.' " *United States v. Lane,* 474 U.S. 438, 451-52 (1986), citing *Maze,* 414 at 403; and *Sampson.*

Schmuck v. United States, 489 U.S. 705 (1989) involved a fraudulent odometer rollback scheme. The Court, noting that mailing allegations are sufficient if incident to an essential part of the scheme, concluded that the mailings of title registration were in execution of the scheme because they were incident to an essential part of the scheme, that is, the successful passage of title which was necessary to petitioner's relationship of trust and good will with the dealers "upon whose unwitting cooperation" the scheme depended.

Analyses by the Fifth Circuit also constrains use of the mail fraud statute, foreclosing efforts to extend its reach beyond a true connection to an essential part of the scheme.  See, *e.g., United States v. Green,* 494 F.2d 820, 823-26 (1974). *Green* involved a fraudulent credit card scheme whereby the defendants submitted fraudulent credit cards applications and obtained and used the cards acquired,

intending to defraud the issuer. The appellants contended no mail fraud offense was charged, as a matter of law. The Court reversed some of the mail fraud convictions on authority of the *Kann* decision but sustained the others, which concerned the applications mailed to secure the credit cards used in the fraudulent scheme. "In sum, since appellants' fraudulent credit card scheme began with the securing of the cards by mail, the use of the mails 'played a significant part in enabling (appellants) . . . to acquire dominion over  .  .  . goods and services for which they did not pay." 494 F.2d at 826.  "The purpose of the mail fraud statute . . . is 'to prevent the post office from being used to carry (schemes to defraud) into effect….' *Durland v. United States,* 161 U.S. 306, 314" (1960). *Green,* 494 F.2d at 823. The mailing must be " 'a part of the execution of the fraud,' " [citing  *Kann* at 323 U.S. at 95] or " 'incident to an essential part of the scheme,' " [citing *Pereira v. United States,* 347 U.S. 1, 8 (1954)]. "The things caused to be mailed may be 'innocent in themselves'  . . .  as long as the mailing is 'a step in a plot.' "  *Green,* 494 F.2d at 824 (citing *Badders,* 240 U.S. at 394)*.*  As the *Green* decision acknowledged, the Supreme Court in *Maze* rejected the government's "contention that the delay caused by use of the mails was essential to the continuation of the fraudulent credit card scheme." 494 F.2d at 824, citing *Maze*, 94 S.Ct. at 649-650.  See, also, *Evans v. United States,* 148 F.3d 477 (5th Cir. 1998) (that a mailing may be incident to a scheme does not make it incident to an essential part of the scheme).

In *United States v. Strong,* 371 F.3d 225 (2004), the defendant was convicted of mail fraud with respect to a scheme which involved the "fraudulent acquisition and sale of automobiles." This Court, however, entered a judgment of acquittal and the government appealed.  In *Strong,* there was "no question but that the government established both a fraudulent scheme, and the use of the mails." *Id.* at 226.  However, the question was whether the mailings of fraudulent applications for certified copies of original titles, which sustained the ongoing fraudulent scheme, were "sufficiently related to the fraudulent scheme itself to prove a violation of the mail fraud statute." *Id.* The Fifth Circuit held that the mailings were not sufficiently related and affirmed the Court's judgment of acquittal with respect to the mail fraud charges.

Here, the mailings of car payments are entirely peripheral to the purported scheme to defraud and cannot be said to have executed the scheme.  The evidence is insufficient on Counts 2-7.

APPLICABLE LEGAL PRINCIPLES

*Insufficiency of the Evidence*

Evidence sufficiency is a requirement of due process of law, that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof - defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979), citing *In Re Winship*, 397 U.S. 358 (1970). Thus, "a

verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Pettigrew,* 77 F.3d 1500, 1521 (5th Cir. 1996), citing *United States v. Menesses,* 962 F.2d 420, 427 (5th Cir. 1992). In assessing evidence sufficiency, "the countervailing evidence as well as the evidence that supports the verdict" should be considered. *United States v. Moreland,* 665 F.3d 137, 149 (5th Cir. 2011); *United States v. Brown,* 186 F.3d 661, 664 (5th Cir. 1999); *United States v. Giraldi*, 86 F.3d 1368, 1371 (5th Cir. 1996).

When requested to so at the close of the government's case in chief, it is the Court's duty to ensure that the evidence presented supports the conviction that the defendant committed the crime charged beyond a reasonable doubt. There must be "substantial evidence" – "taking the view most favorable to the prosecution." *Glasser v. United States,* 315 U.S. 60, 80 (1942). Sufficiency of the evidence is a requirement of due process. *In re Winship,* 397 U.S. 358 (1970) "presupposes as an essential element of the due process guaranteed . . . that no person shall be compelled to suffer the onus of a criminal conviction except upon sufficient proof - defined as evidence necessary to convince a trier of fact **beyond a reasonable doubt of the existence of every element of the offense**." *Jackson v.Virginia*, 443 U.S. 307, 316 (1979) (emphasis added). This is the minimum standard which applies to enforce the constitutional guarantee of due process.

1. " '[I]t is the duty of the government to establish * * * guilt beyond a reasonable doubt.  This notion - basic in our law and rightly one of the boasts of a free society - is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.' " *Winship,* 397 U.S. at 362 (citing Justice Frankfurter's dissenting opinion in *Leland v. Oregon*, 343 U.S. 790, 802-803 (1952)).

2. "Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." *Brinegar v. United States*, 338 U.S. 160, 174 (1949).

3. "[T]he accused is shielded by the presumption of innocence, the 'bedrock[,] axiomatic, and elementary principle whose enforcement lies at the foundation of the administration of our criminal law.' " *Betterman v. Montana,*_U.S._, 136 S.Ct. 1609, 1614 (2016), citing *Reed v. Ross,* 468 U.S. 1, 4 (1984) (internal quotation marks omitted).

4. Rule 29(a), F.R.Crim.P. provides:

    (a) **Before Submission to the jury.** After the government closes its

evidence or after the close of all the evidence, the court on the defendant's motion **must** enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

FOR THE REASONS STATED, judgments of acquittal should be

entered with respect to Counts 1-8.

Respectfully submitted,

*Shirley Baccus-Lobel*                        *Chris Monroe Knox*

Law Office of Shirley Baccus-Lobel, PC        Law Office of Chris
8350 Meadow Road, Suite 186                   900 Jackson St., #650
Dallas, Texas 75231                           Dallas, Texas 75202
214.220.8460                                  214.741.7474
214.987.3169 (f)                              214.747.7711 (f)
sbl@lobellaw.com                              chrisknox@knoxcriminaldefense.com

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically submitted to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means:

AUSA's Walt Junker, Katherine Miller, and Nick Bunch 3rd Floor, 1100 Commerce, Dallas, Texas 75242, and all counsel of record.

/s/ Shirley Baccus-Lobel
SHIRLEY BACCUS-LOBEL